[No. H006848. Sixth Dist. Apr. 15, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
AMWEST SURETY INSURANCE COMPANY, Defendant and
Appellant.

COUNSEL

Charles C. Tarbox and Tim Provis for Defendant and Appellant.

Steven M. Woodside, County Counsel, and Kevin D. Allmand, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

ELIA, J.—Amwest Surety Insurance Company (Amwest) appeals from an order denying its motion to vacate forfeiture of bail and exonerate the bond in two criminal actions against defendant Ruben Williams. Amwest's sole contention on appeal is that it made an effective surrender of Williams within the meaning of Penal Code sections 1300, 1301, and 1305, and the forfeitures should therefore have been set aside. We affirm the order.

FACTS

On March 21, 1987, an agent for Amwest posted a $7,500 bail bond to secure the appearance of Williams, who had been charged with violating Health and Safety Code section 11351 and Penal Code section 496. On October 11, 1988, Williams failed to appear for trial and the bond was forfeited. On July 17, 1987, Amwest posted a $5,000 bond for Williams, who was again facing narcotics-related charges. On September 22, 1988, Williams failed to appear for sentencing in the second case and the $5,000 bond was forfeited. Summary judgment on both forfeitures was entered on June 5, 1989.

On March 10, 1989, Richard Sosa, special investigator for Gus Abril Bail Bonds, and his partner, Luis Chavez, were sent to a house in San Jose to look for Williams. Sosa took with him a certified copy of a bail bond, a copy of the application for a bail bond, a photograph of Williams, and a document entitled "Empowerment to Arrest." Sosa and Chavez also knew that Williams was a professional boxer.

At 10 a.m. on March 11, 1989, Sosa and Chavez spotted Williams outside the house, looking at a car with another man. Ten to fifteen minutes later

the two men went inside the house. Sosa called the San Jose Police Department for assistance in taking Williams into custody. Three officers responded. Sosa told the officers that a warrant was outstanding for Williams's arrest and that Williams was a professional boxer. One of the officers ran a warrant check on Williams that came back negative. He then requested a "hand check" for a physical copy of a warrant, also with negative results.

The officer told Sosa and Chavez that without an abstract or hard copy of an arrest warrant, the police would not be able to arrest Williams; if, however, a copy of the warrant were found, the officers would be happy to return to help them. A San Jose police district sergeant arrived at the scene and concurred in the decision not to arrest. The officers then left.

Knowing they had the authority to take Williams into custody, neither Sosa nor Chavez attempted to do so because of Williams's boxing experience. Chavez testified he was scared; Sosa "just . . . didn't want to get hurt." The agents therefore left without taking any further action to arrest the defendant.

On March 21, 1989, Amwest moved to vacate forfeiture and exonerate the bonds, claiming that through its bondsmen, it had made an effective surrender of Williams to police custody and that the officers' refusal to arrest the defendant rendered its performance of the bond impossible. The trial court disagreed, noting that Sosa had the authority to arrest and chose not to for personal safety reasons. The court further found that the refusal of the police officers to enter the house without a warrant was justified, and that they had no duty to arrest the defendant. Because the bondsmen had failed to secure custody of Williams, they had failed to comply with the surrender provisions of Penal Code section 1301. Accordingly, the court denied Amwest's motion.

### DISCUSSION

On appeal, Amwest renews its contention that it made an effective surrender within the meaning of Penal Code sections 1300, 1301, and 1305.[1] While acknowledging it had the authority to arrest under these sections, Amwest maintains it was not *required* to do so in order to effect a valid surrender. To interpret the statutes otherwise, it argues, would only "encourage the use of violence by private persons," contrary to public policy.

As a preliminary matter, we dispose of the portion of Amwest's contention that suggests it was required only to present a certified copy of

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

the bail bond to effect a complete surrender. This assertion is based on section 1300, subdivision (a)(1), which applies to surrenders of the principal *before* forfeiture occurs.[2] This section is not applicable here, since our focus is on events transpiring after the defendant's nonappearance and the court's forfeiture of bail in both actions. Accordingly, we will consider only whether the bondsmen's actions constituted a "surrender" within the meaning of sections 1301 and 1305.

■ At the time of the events at issue, the relevant portion of section 1305 stated:[3] "If, at any time within 180 days after . . . entry in the minutes [of defendant's nonappearance] or mailing [of notice of forfeiture], as the case may be, the bail should surrender the defendant to the court or to custody, the court shall, under terms as may be just, direct the forfeiture of the undertaking or the deposit to be set aside and the bail or the money deposited instead of bail exonerated immediately." (Stats. 1987, ch. 1081.) This section must be strictly construed in favor of the surety to avoid the harsh consequences of forfeiture. (*People* v. *Surety Ins. Co.* (1982) 136 Cal.App.3d 556, 561 [186 Cal.Rptr. 385]; *People* v. *Surety Ins. Co.* (1985) 165 Cal.App.3d 22, 26 [211 Cal.Rptr. 204].) Nevertheless, it is the surety's burden to establish that its excuse falls within the provisions of this statute. (*People* v. *Ramirez* (1976) 64 Cal.App.3d 391, 398 [134 Cal.Rptr. 511]; *People* v. *United Bonding Ins. Co.* (1969) 272 Cal.App.2d 441, 445-446 [77 Cal.Rptr. 310].)

Section 1301 states, in pertinent part: "*For the purpose of surrendering the defendant,* the bail or any person who has deposited money or bonds to secure the release of the defendant, at any time before such bail or other person is finally discharged, and at any place within the state, *may himself arrest defendant,* or by written authority indorsed on a certified copy of the undertaking or a certified copy of the certificate of deposit, may empower any person of suitable age to do so." (Italics added.)

■ The question before us is whether a surety's attempted transfer of custody can be considered a surrender if the surety has not first arrested the defendant.[4] Neither section 1305 nor section 1301 defines "surrender." A

---

[2] Section 1300, subdivision (a)(1) provides: "At any time before the forfeiture of their undertaking, or deposit by a third person, the bail or the depositor may surrender the defendant in their exoneration, or he may surrender himself, to the officer to whose custody he was committed at the time of giving bail, in the following manner: [¶] (1) A certified copy of the undertaking of the bail . . . to the officer who must detain the defendant in his custody thereon . . . ."

[3] The current version of section 1305 is the result of nonsubstantive legislative changes made in 1990.

[4] This issue as thus identified does not require discussion of *County of L.A.* v. *Stuyvesant Ins. Co.* (1964) 227 Cal.App.2d 428 [38 Cal.Rptr. 713], on which Amwest relies. That case

fair reading of section 1301, however, conveys an assumption, if not an intent, that the surety will take physical custody of a defendant before attempting to deliver the defendant to the court, sheriff, or police.

Amwest correctly points out that the language of section 1301 is permissive, not mandatory. It then concludes, however, that because it was not *required* to arrest for the purpose of surrender, it should not be held responsible when it chooses *not* to use its authority to arrest and consequently fails to accomplish the surrender.

If Amwest's contention were correct, a surety who has undertaken to produce a defendant in court would be obligated to do no more than alert law enforcement authorities to the whereabouts of the defendant and leave to them the task of apprehending the defendant. To permit such a result, however, would eviscerate the bail bond system. ■ A bail bond is in the nature of a contract between the government and the surety, in which the surety acts as a guarantor of the defendant's appearance under risk of forfeiture of the bond. (8 Am.Jur.2d, Bail and Recognizance, § 62, p. 635, § 101, p. 659.) "In general the state and surety agree that if the state will release the defendant from custody, the surety will undertake that the defendant will appear personally and at a specified time and place . . . . If the defendant fails to appear at the proper time and place, the surety becomes the absolute debtor of the state for the amount of the bond." (8 Am.Jur.2d, *supra*, § 62, p. 635, fn. omitted.)

■ Thus, when Williams was released to the custody of Amwest, it became Amwest's *sole* responsibility to produce him at the appointed time. (*People* v. *Amwest Surety Ins. Co.* (1987) 195 Cal.App.3d 1396, 1400 [241 Cal.Rptr. 412].) The government, on the other hand, "was not required to cooperate with Amwest by taking affirmative steps to ensure that it could produce [the defendant.]" (*Ibid.*)

Only if the government took some *affirmative* action that rendered the surety's performance impossible would his obligation be excused and the bond exonerated. (*People* v. *National Auto. & Cas. Ins. Co.* (1979) 92 Cal.App.3d 481, 483-484 [154 Cal.Rptr. 872].) However, the mere refusal of the police to arrest a defendant does not make performance impossible. As the People point out, Amwest could have sent other agents to assist in apprehending Williams, or it could have procured a copy of the warrant and then asked the police to return and make the arrest, as suggested to Sosa and Chavez by the investigating officer. The mere reluctance of a

---

involved the refusal to accept the surrender of a defendant whom the surety had already arrested and brought before the court.

bondsman to confront an intimidating subject is alone insufficient to excuse the surety's failure to comply with section 1305. The motion to vacate forfeiture and exonerate the bonds was properly denied.

The order is affirmed.

Premo, Acting P. J., and Cottle, J., concurred.