[No. B065563. Second Dist., Div. Four. Dec. 22, 1994.]

THE PEOPLE, Plaintiff and Appellant, v.
RANGER INSURANCE COMPANY, Defendant and Respondent.

[No. B066363. Second Dist., Div. Four. Dec. 22, 1994.]

THE PEOPLE, Plaintiff and Appellant, v.
NATIONAL AUTOMOBILE & CASUALTY INSURANCE COMPANY,
Defendant and Appellant.

## COUNSEL

Gil Garcetti, District Attorney, Glenn Britton and George G. Size, Deputy District Attorneys, De Witt W. Clinton, County Counsel, S. Robert Ambrose, Assistant County Counsel, and Gary N. Miller, Deputy County Counsel, for Plaintiff and Appellant.

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant and for Defendant and Respondent.

## OPINION

**VOGEL (C. S.), J.—**

### INTRODUCTION

These consolidated appeals contest rulings made by the trial court at a hearing to vacate two bail forfeitures. We first reject the contention made by

the two sureties (National and Ranger) that the trial court lacked jurisdiction to order the bail forfeitures in the first instance. We affirm the trial court's ruling denying National's motion to vacate its forfeiture, finding that the policy provision relied upon by National does not establish that the issued bond was void. Because we agree with the district attorney that the trial court erred in holding that the court could not consider equitable principles in deciding Ranger's motion to vacate, we reverse the order vacating that forfeiture and exonerating the bond and direct the trial court to reconsider the case in light of the views expressed herein.

### FACTUAL AND PROCEDURAL BACKGROUND

Jose de Jesus Gonzalez (Gonzalez) was charged with several drug offenses. The court set bail at $150,000. On August 16, 1990, two bail bonds were posted through the same bail agent, Bert Potter Bail Bonds. National Automobile and Casualty Insurance Company (National) posted a $50,000 bond. The face of that bond stated, in pertinent part: "This bond is void if limits altered or erased or if used singly or with other bonds of this company to furnish bail in excess of $50,000.00." Ranger Insurance Company (Ranger) posted the second bond in the amount of $100,000. The face of that bond stated, in pertinent part: "This bond is void if written for an amount greater than the power of attorney attached hereto. . . ." The attached power of attorney provided: "This Power of Attorney is for use with Bail Bonds only. . . . This power void . . . if used . . . in combination with powers from any other surety company, void if used to furnish bail in excess of the stated face amount of this power [of $100,000] . . . ."

On January 9, 1991,[1] Gonzalez entered into a negotiated disposition with the People. The court ordered Gonzalez to return on March 15 for the probation and sentencing hearing.

On March 6, the court advanced the matter. The record is unclear as to whether Gonzalez was in court on that day. The clerk's minute order contains a check mark next to Gonzalez's name, indicating his presence in court on that day. There are also check marks next to the names for defense counsel and the deputy district attorney. Additionally, the recitations in the minute order that Hector Gutierrez, a Spanish interpreter, was sworn and that "[d]efendant [was] instructed to return" on April 19 are further evidence that Gonzalez was present. However, the reporter's transcript for a brief portion of that day's proceedings states: "The defendant not being present in court with counsel and the People not being represented the following proceedings were held." As the parties have proceeded upon the assumption that Gonzalez was, in fact, not present in court on March 6, we shall indulge them on that point in order to give full consideration to all claims of error.

---

[1] All subsequent dates refer to events in 1991.

In any event, the reporter's transcript for March 6 recites, in toto: "The court: Jose Gonzalez. That matter was on calendar for return of property. No motion has been filed. The matter is taken off calendar. [¶] (At 8:33 A.M. a recess was taken until 10:50:) [¶] The Court: The Jose DeJesus Gonzalez matter that the court earlier took off the calendar, I am restoring it to calendar. *Counsel was in on this matter, and made a report to me that the defendant's mother is dying of cancer.* I have received a communication from a Doctor Jorge Fumigachi (phonetic), which is written in Spanish, but indicates that the defendant's mother is terminally ill, and there has previously been a stay of execution on this matter. It was continued to March 15th for sentencing. Based on this circumstance, I have indicated to Mr. Janofsky [counsel for Gonzalez] that I would trail the sentencing to April 19, 1991, and that is the order of the court."[2] (Italics added.)

On April 16, Gonzalez, represented by counsel, appeared as did the prosecutor. (Because of illness in Gonzalez's family, the hearing had been advanced from its originally scheduled date of April 19.) At the hearing, counsel for Gonzalez requested a continuance because Gonzalez's mother had terminal cancer.[3] The court granted the request and reset sentencing for June 14.

On June 14, defendant failed to appear. The court issued a bench warrant for his arrest and ordered the forfeiture of the $150,000 bail. The court sent notices to National and Ranger advising them of its forfeiture order.

The two sureties thereafter moved to vacate the forfeitures. Although each filed a separate motion, each was represented by the same attorney (as they likewise are on this appeal). National contended its policy was void because it was used in conjunction with the Ranger policy to post $150,000 bail, thereby violating the provision that it not be used to furnish bail in excess of $50,000. Ranger contended that its policy was void because its issuance violated the provision that its policy not be used with policies from other companies. Additionally, both Ranger and National argued that the trial court had lost its jurisdiction to forfeit bail because it had failed to order a forfeiture when Gonzalez allegedly did not appear on March 6, the day the court had advanced and vacated the March 15 sentencing hearing.

At the hearing held on the sureties' motions, the People, represented by the Office of the Los Angeles County District Attorney, argued against the

---

[2]The court's minute order for March 6 recites: "Due to illness in defendant's family, the probation and sentencing hearing (P & S) set on 3-15-91 is advanced and vacated, and said hearing is continued as above [to April 19]."

[3]A letter from Dr. Merrill was filed with the court on that day (April 16). It states: "I admitted Ms. Maria Gonzales to Daniel Freeman Hospital last month. [¶] She has lung cancer. Her condition is terminal. We feel it is important that her family be intact during these final months in her life."

motions to vacate.[4] Essentially, the People urged that the sureties should be estopped from contending the policies were void because issued in violation of their respective provisions. The People urged that both policies had been issued by a duly authorized agent so that the companies had constructive knowledge of any purported violation for a year and a half but had done nothing until the court ordered the forfeitures.[5]

The court rejected the sureties' claim that it had no jurisdiction to order the forfeiture. It ruled: "The court finds that the court did not lose jurisdiction on March 6th, 1991. I think a reasonable interpretation of the minute order [see fn. 2, *ante*] is that the court was satisfied that there was good cause for the defendant's nonappearance because of the poor health of his mother. I do not have a specific point to draw attention to other than the overview of the minute order, the fact the matter was advanced from a previously scheduled date, thereby lending some note of emergency to this situation. The court acted properly."

The court then ruled: "As to the People asking the court to apply equity principles, equity principles do not apply to bond forfeiture proceedings. These are strictly legal interpretations. The court believes that the authority of the power of attorney was exceeded when the Ranger bond for $100,000 was used in combination with an additional $50,000 bond from National, thereby making the $100,000 bond void. It should not have been accepted by the jail or by the court for release of Mr. Gonzalez. The court is going to grant the motion to exonerate the $100,000 bail. As to the National bond, I'm considering all the arguments made by Mr. Bernstein [counsel for the sureties], that once the $100,000 is void, that the full amount of the bond isn't met because you only have $50,000 being put up. The court still believes the limitations and the wording in the National bond leave that company liable for the $50,000. And the motion to exonerate [the] National bond is denied."

Thereafter, the court entered summary judgment on the forfeiture of the National bail bond. These consolidated appeals by the People and the two sureties followed.

### DISCUSSION

*The Trial Court Did Not Lack Jurisdiction to*
*Declare the Bail Forfeitures on June 14*

■ Both Ranger and National contend that the trial court lacked jurisdiction to declare the bail forfeitures on June 14 because on March 6, when

---

[4]Various statutes provide for the People's participation in bail forfeiture proceedings. (See, e.g., Pen. Code, §§ 1305.3 and 1306, subd. (e), and Gov. Code, § 26521.)

[5]The record on appeal does not include any written pleadings filed by the People.

Gonzalez allegedly did not appear, the court advanced and reset the sentencing hearing rather than order a forfeiture at that time. The sureties' analysis is flawed.

The version of Penal Code former section 1305, subdivision (b)[6] in effect at the time of the pertinent events[7] provided, in pertinent part: "If, without sufficient excuse, the defendant neglects to appear . . . upon any . . . occasion when his . . . presence in court is lawfully required, . . . but the court has reason to believe that sufficient excuse may exist for his . . . neglect to appear . . . , the court may continue the case for a period as it deems reasonable to enable the defendant to appear without ordering a forfeiture of bail or issuing a bench warrant." It is implicit in this statutory provision that a court may excuse a bailee's appearance in advance of a hearing if it believes sufficient excuse exists to do so. (*People* v. *Ranger Ins. Co.* (1992) 6 Cal.App.4th 1301, 1306 [8 Cal.Rptr.2d 464].)

This statutory provision creates a limited exception to the general rule that a failure to appear requires the court to order forfeiture of the bail with prompt notice to the surety. (*People* v. *Surety Ins. Co.* (1985) 165 Cal.App.3d 22, 26 [211 Cal.Rptr. 204].) The theory behind this exception is that "[i]f bail forfeiture is required immediately upon the first nonappearance of a defendant, no matter how valid his reason for nonappearance be, such defendant would be subjected not only to having his bail forfeited but the additional penalty of possibly being required to pay another premium for its reinstatement." (*People* v. *Surety Ins. Co.* (1976) 55 Cal.App.3d 197, 202 [127 Cal.Rptr. 451].) Accordingly, the court can continue a hearing and still retain its jurisdiction to declare a forfeiture at a later time as long as it has a reason to believe that a sufficient excuse exists for the nonappearance. (*People* v. *American Bankers Ins. Co.* (1989) 215 Cal.App.3d 1363, 1367 [264 Cal.Rptr. 152].) "In most situations involving a section 1305, subdivision (b) determination the only reasons before the trial court are the evidence or representations furnished by defendant's counsel. The cases demonstrate that the courts have cooperated with defense counsels' requests and have liberally relied on their representations." (*People* v. *National Automobile & Cas. Ins. Co.* (1977) 75 Cal.App.3d 302, 306 [142 Cal.Rptr. 98].)

In the present case, the reporter's transcript reflects that on March 6, nine days prior to the scheduled sentencing hearing, Gonzalez's attorney appeared and told the court that Gonzalez's mother had terminal cancer. The

---

[6]All subsequent statutory references are to the Penal Code.
[7]The substance of this section is now contained in section 1305.1.

court also stated that a doctor's letter contained the same information.[8] Assuming arguendo that Gonzalez was not then present, we believe that the court did not abuse its discretion in concluding that it had reason to believe that a sufficient excuse existed for his nonappearance. The trial court therefore did not err when it reset the matter to a later date instead of ordering an immediate bail forfeiture.[9] Consequently, when Gonzalez failed to appear on June 14, the trial court had jurisdiction to order forfeiture of the bail bonds.

### The Trial Court Properly Denied National's Motion to Exonerate Its Bail Bond

■ National relies upon the following language in the bond to argue that its bond was void: "This bond is void if limits altered or erased or *if used* singly or *with other bonds of this company* to furnish bail in excess of $50,000.00." (Italics added.) National argues that this provision "means that the bond was void if combined or 'stacked' with another bond, whether its own or that of another company." That is, National argues that this anti-stacking provision applies to this case even though the other bail bond was furnished by a different company. We disagree. The provision clearly prohibits only the combination of two or more bonds from National to post a bail in excess of $50,000. The provision does *not* prohibit combining a National policy with a policy from a third company such as Ranger.[10] If National wished to bar use of its policy with that of another company, it could have used language such as that found in Ranger's policy. National chose not to do so. We will not rewrite its policy for it. Because the issuance

---

[8]The sureties urge that this letter, written entirely in Spanish, does not support the trial court's decision. Their argument is predicated entirely upon a translation of the letter made by their appellate attorney, an individual who claims to "ha[ve] the benefit of reading and writing Spanish." We disregard this argument for the following reasons. The sureties never furnished this particular translation to the trial court in arguing to vacate the bail forfeitures. The parties on this appeal have not stipulated to the tendered translation. And defense counsel's representation to the trial court that Gonzalez's mother had terminal cancer would have been a sufficient basis by itself to sustain the decision to reset and continue the sentencing hearing. (See *County of Los Angeles* v. *Surety Ins. Co.* (1985) 165 Cal.App.3d 948, 950-951 [212 Cal.Rptr. 69], and *People* v. *Wilshire Ins. Co.* (1975) 53 Cal.App.3d 256, 261 [125 Cal.Rptr. 529].)

[9]Gonzalez did appear as ordered at the next hearing on April 16.

[10]In the trial court, National conceded the validity of this analysis. During the hearing, the court said to counsel: "[I]f you would address one point. In your motion for the court to exonerate the National bond, your first ground is that the bond is [in] excess of the limit. And looking at the face sheet of the bond, the limitation is 'if you singly or with other bonds of this company furnish bail.' We have two separate companies." Counsel responded: "That's absolutely correct. *And I think the language in the National power [of attorney] allows the joining of multiple bonds.* I agree with the court. All they're saying in that limitation is that a bond may not be posted in excess of $50,000, or two powers of that company joined." (Italics added.)

of National's policy did not violate any explicit bond provisions, the trial court properly denied National's motion to set aside the forfeiture.

### The Trial Court Erred in Holding That Equitable Principles Did Not Apply to Ranger's Motion

Ranger's motion contended that its policy was void because its issuance in conjunction with National's $50,000 policy exceeded the power of attorney attached to the bond. Essentially, the People urged that an equitable estoppel should bar Ranger from making that contention because Ranger had imputed knowledge via its bail agent that the power of attorney had been exceeded, had accepted the benefits of the transaction (the $10,000 premium charged for the bond), and had done nothing until 18 months later when the court had ordered a forfeiture. The trial court explicitly declined to consider the merits of this argument based upon its belief that equitable principles were inapplicable to the proceeding. As we shall explain, that belief is incorrect.

(4) A power of attorney is a written authorization to an agent to perform specified acts on behalf of the principal. (*Jay* v. *Dollarhide* (1970) 3 Cal.App.3d 1001, 1020 [84 Cal.Rptr. 538].) The rights and liabilities created by the exercise of such authority are centered in the law of agency. (3 Cal.Jur.3d, Agency, § 26, p. 41.) If an agent engages in an unauthorized act, the principal may be estopped to disavow that action. (*Id.*, § 63, pp. 86-88.) (3b) Given those principles, it is not surprising that cases have implicitly assumed the applicability of the principle of estoppel to bail proceedings.

For instance, in *People* v. *Stuyvesant Ins. Co.* (1968) 261 Cal.App.2d 773, 783 [68 Cal.Rptr. 389], the surety contended on appeal that the People were estopped from opposing the vacating of the bail forfeiture order because of representations made by representatives of the district attorney's office. The Court of Appeal rejected the contention, finding that the elements of estoppel were not present. (*Id.* at p. 784.)

Similarly, in *People* v. *Walling* (1961) 195 Cal.App.2d 640 [16 Cal.Rptr. 70], the surety appealed from an order denying its motion to vacate a bail forfeiture. One of its contentions was that the contested "order should have been vacated on equitable principles." (*Id.* at p. 649.) After carefully reviewing the record, the Court of Appeal concluded: "Neither the actions of bail nor the actions of the bail's principal present to us any factors which properly warrant the interposition on their behalf of a court of equity." (*Id.* at p. 650.)

The sureties took a similar approach in *People* v. *Surety Ins. Co.* (1978) 77 Cal.App.3d 533 [143 Cal.Rptr. 661], where they appealed from an order

denying their motion to set aside two bail forfeitures. In the trial court, the sureties had urged that government employees had given them false and erroneous information about the charges filed against the accused and that had they known the correct information, they would not have posted the two bonds. Thus, the sureties urged that an equitable estoppel barred the trial court from declaring the forfeitures. In support thereof, the sureties submitted factual declarations to establish the elements of equitable estoppel. The trial court denied the motion. On appeal, the sureties contended that they had demonstrated equitable estoppel. The reviewing court first noted that the existence of an estoppel is a question of fact and then canvassed in detail the sureties' declarations before it concluded that the trial court had not erred in implicitly determining estoppel had not been shown.

Particularly significant is *People* v. *Surety Ins. Co.* (1982) 136 Cal.App.3d 556 [186 Cal.Rptr. 385]. There, a bail bond had been issued by an agent whose power of attorney had been revoked two years prior thereto. Following the bond's forfeiture, the surety moved to vacate and to exonerate on the basis that it could not be liable on the bond because it (the surety) had notified the Los Angeles County Clerk that the agent's power of attorney had been terminated. The district attorney sought to impose liability against the surety on theories of ostensible authority and ratification. In particular, the district attorney urged that a particular fact should estop the surety from disputing its former agent's authority. (*Id.* at pp. 563-564.) The Court of Appeal examined and rejected these claims on their merits, finding no evidence to support the People's arguments.

Thus, in all of these cases, the Courts of Appeal assumed that equitable principles were applicable to bail proceedings and analyzed the factual record in that light.[11] This approach is consistent with the rules that a bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond (*People* v. *Amwest Surety Ins. Co.* (1991) 229 Cal.App.3d 351, 356 [280 Cal.Rptr. 58]) and that estoppel can be raised in a contract action (see *Trustees of California State University & Colleges* v. *National Collegiate Athletic Assn.* (1978) 82 Cal.App.3d 461, 472 [147 Cal.Rptr. 187]). It therefore follows that the trial court erred in concluding that it could not consider equitable principles in ruling upon Ranger's motion.

---

[11]In a related vein, our Supreme Court noted that an estoppel would preclude a bailee whose failure to appear had resulted in a forfeiture of bail and penalty assessment from later seeking recoupment of the penalty assessment even though the latter sum had been illegally assessed. (*McDermott* v. *Superior Court* (1972) 6 Cal.3d 693, 697-698, and fn. 3 [100 Cal.Rptr. 297, 493 P.2d 1161].)

Ranger's argument to the contrary misses the mark. While it is true sections 1305 and 1306 set forth the particular procedures to be followed in bail forfeiture proceedings and cases have held that those sections are jurisdictional and therefore subject to strict construction (see, e.g., *People* v. *Surety Ins. Co.*, *supra*, 165 Cal.App.3d 22, 25, fn. 2, and *People* v. *Surety Ins. Co.*, *supra*, 136 Cal.App.3d at p. 561), nothing in those sections addresses the issue of the applicability of equitable principles. Consequently, those sections cannot be reasonably construed to be prohibitions on a party's ability to raise a claim of equitable estoppel.

Because the application of equitable estoppel is a factual question entrusted to the trial court's discretion (*Cuadros* v. *Superior Court* (1992) 6 Cal.App.4th 671, 675 [8 Cal.Rptr.2d 18]), we will reverse the order granting Ranger's motion in order to permit the court to reconsider the matter.[12]

### DISPOSITION

The order of January 21, 1992, denying National's motion to vacate the bail forfeiture and to exonerate the bond is affirmed. The order of January 21, 1992, granting Ranger's motion to vacate the bail forfeiture and to exonerate the bond is reversed and the matter is remanded for further proceedings consistent with the views expressed herein. The parties to bear their own costs on appeal.

Epstein, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied January 11, 1995, and respondent's petition for review by the Supreme Court was denied March 2, 1995.

---

[12]We reject the district attorney's claim that such a remand is not necessary because this court should find that estoppel is present as a matter of law. As the district attorney apparently never filed a written pleading in the trial court raising this claim (see fn. 5, *ante*), Ranger did not have an opportunity to develop a full factual and legal response to the claim. A remand will give the parties an opportunity to fully explore the issue.