[No. B110973. Second Dist., Div. Six. Feb. 19, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
RANGER INSURANCE COMPANY, Defendant and Appellant.

## COUNSEL

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

James L. McBride, County Counsel, and William A. Waters, Assistant County Counsel, for Plaintiff and Respondent.

## OPINION

**COFFEE, J.**—Ranger Insurance Company appeals from an order denying a motion to vacate the forfeiture of a bail bond, and from the summary judgment entered in favor of the People on the forfeiture of that bond. We affirm.

### FACTS

In 1992, the Ventura County District Attorney charged Channa Pryia Ruberoe with violating Penal Code section 288, subdivision (a).[1] On September 14, 1992, Amwest Surety Insurance Company (Amwest) posted a $10,000 bond for his bail.

Ruberoe was convicted on July 22, 1993, and bail was reset at $75,000. He was remanded into custody pending the posting of bail in the increased amount. On July 24, Ranger Insurance Company (Ranger) posted a $65,000 surety bond for Ruberoe's release pending sentencing. On August 31, Ruberoe failed to appear at his sentencing hearing and the bail was declared

---

[1]All statutory references are to the Penal Code.

forfeited. (§ 1305, subd. (a).) A notice of forfeiture was mailed to Ranger and its bail agent on September 30, and to Amwest on September 3.[2] (§ 1305, subd. (b).)

Under section 1305, a surety may obtain exoneration of a bail bond within 180 days of the notice of forfeiture if certain conditions are met. If the bond is not exonerated within this period, the People have 90 days to enter summary judgment on the forfeiture. (§ 1306.) On November 3, 1993, Ranger filed a motion to vacate the forfeiture of its $65,000 bond on the ground that its obligation had been rendered void when the trial court combined or "stacked" it with the $10,000 Amwest bond. Ranger's motion to vacate was continued and the 180-day period under section 1305 was tolled when the parties discovered Ruberoe was in custody in Sri Lanka.[3] The order tolling the 180-day period was entered on January 31, 1994 (after 123 days had elapsed), and terminated on May 2, 1995. On June 20, 1995 (after 49 more days of the 180-day period had run), the court again ordered the 180-day period tolled.

On April 15, 1996, Ranger filed a supplemental motion to vacate the forfeiture on the grounds that exoneration is required under section 1305, subdivision (c)(3) when the defendant is arrested outside the county on the underlying case. This portion of the motion was denied on June 24, 1996.

On January 15, 1997, the tolling of the 180-day period expired. On February 6, 1997, the court entered summary judgment against Ranger on the $65,000 bond as authorized by section 1306. On March 17, 1997, Ranger's still-pending motion to vacate the forfeiture on the grounds of improper bond stacking was denied. Ranger appealed both the order granting summary judgment and the order denying his motion to vacate the forfeiture, and we have ordered those appeals consolidated. (See § 1308; *People* v. *Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1382-1383 [59 Cal.Rptr.2d 777].)

During the pendency of the motion to vacate the forfeiture, the Ventura County District Attorney attempted to extradite Ruberoe from Sri Lanka. The record does not reflect that Ruberoe was ever returned to the Ventura County authorities.

---

[2]The bond posted by Amwest was ordered exonerated on February 22, 1994. That bond is not at issue in this appeal.

[3]Section 1305, subdivision (e) requires the tolling of the 180-day period for obtaining exoneration of the bond when, among other things, the defendant is detained elsewhere by civil or military authorities.

## DISCUSSION

## I.

*Ranger's Power of Attorney Did Not Prohibit the "Stacking" of Bail Bonds.*

■ Ranger argues it was entitled to have its $65,000 bond exonerated because it was improperly combined or "stacked" with the $10,000 Amwest bond to meet Ruberoe's postconviction bail, contrary to express language in the power of attorney used to issue the bond. We reject this claim because the language contained in the bail bond and attached power of attorney did not specifically prohibit stacking the Ranger bond with one issued by another company.

The face of the Ranger bond stated, "This bond is void if written for an amount greater than the power of attorney attached hereto, if more than one such power is attached, or if written after the expiration date if specified on the attached power of attorney." The power of attorney attached to the bond provided, "This Power of Attorney is for use with Bail Bonds only. . . . This power void if altered or erased, *void if used with other powers of this company or in combination with powers from any other surety company*, void if used to furnish bail in excess of the stated face amount of this power, and can only be used once. [¶] The obligation of the company shall not exceed the sum of ONE HUNDRED THOUSAND DOLLARS." (Italics added.)

Ranger argues this highlighted language prohibited both the use of multiple powers of attorney to issue a single bond and the use of multiple bonds to meet the total amount of bail. The issuance of two bail bonds contemplates the use of at least two powers of attorney, and might indirectly fall under the express restriction on combining powers. But the language which Ranger relies upon refers only to the combination of "powers" and does *not* clearly and specifically prohibit using two separate bonds to meet bail.

■ Any ambiguities in a surety contract will be construed against the drafter, in this case Ranger. (See *Granite Construction Co.* v. *American Motorists Ins. Co.* (1994) 29 Cal.App.4th 658, 669 [34 Cal.Rptr.2d 835], citing *Cathay Bank* v. *Lee* (1993) 14 Cal.App.4th 1533, 1541 [18 Cal.Rptr.2d 420].) While bail forfeitures are generally disfavored and the statutes affecting forfeiture procedures must be interpreted when possible to avoid this result (see *People* v. *Ranger Ins. Co.* (1992) 9 Cal.App.4th 1302, 1305 [12 Cal.Rptr.2d 343]), this rule does not mean the terms of a bail contract should be construed in the light most favorable to rendering the contract void.

■ Applying these principles, the language in the power of attorney does not prevent the stacking of bonds to meet the total amount of bail set by

the court. Instead, it renders the power of attorney void if used in combination with other powers of attorney to issue a single bond. This language complements that contained on the face of the bail bond itself, which also prohibits the use of more than one power of attorney to issue a single bond. Only one power of attorney was used in this case, so there is no basis for exonerating the forfeiture.

We acknowledge our interpretation is contrary to dicta in *People* v. *Ranger Ins. Co.* (1994) 31 Cal.App.4th 13, 16, 20 [36 Cal.Rptr.2d 807]. In that case, the appellate court cited language in a power of attorney identical to the one before us as an example of an antistacking provision which prohibited the use of multiple bonds. The *Ranger* court did not directly consider the effect of that language upon the bond company which had issued the power of attorney; rather, it was comparing it to the terms of another bail bond which lacked similar language. A closer examination shows that the language bars only the use of multiple powers of attorney—not the use of multiple bonds.

We also reject Ranger's related claim that its bond was void because Ruberoe posted bail in an amount less than that set by the court. This reasoning is flawed because the full amount of Ruberoe's $75,000 postconviction bail was met by combining the $10,000 Amwest bond and the $65,000 Ranger bond.

Ranger assumes the Amwest bond was exonerated as a matter of law when Ruberoe was remanded into custody after the verdict. We agree that a surety's obligation ceases when a defendant is remanded into custody. (See *People* v. *McReynolds* (1894) 102 Cal. 308, 310 [36 P. 590]; *People* v. *Amwest Surety Ins. Co.* (1986) 180 Cal.App.3d 444, 447 [225 Cal.Rptr. 592]; § 1166.) But whatever Amwest's rights, the court did not order the $10,000 bond exonerated when Ruberoe was remanded. Instead it accepted a $65,000 bond from Ranger to make up the difference between the $10,000 bond posted by Amwest and the $75,000 postverdict bail amount. The combination of bonds met the full amount of bail, even though Amwest was entitled to seek exoneration of its bond on the grounds that Ruberoe had been remanded into custody. Ruberoe was not released on a lesser amount of bail than was ordered by the court.

II.

*Ranger Was Not Entitled to Exoneration of the Bond Under Section 1305,*
*Subdivision (c)(3)*

Ranger also contends the trial court was obligated to exonerate its bond under section 1305, subdivision (c)(3), which provides, "If, outside the

county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case within the 180-day period, the court shall vacate the forfeiture and exonerate the bail." The trial court specifically found that Ruberoe was in custody in Sri Lanka on the underlying charges, but rejected Ranger's argument that section 1305, subdivision (c)(3) applied when the defendant was arrested in a foreign nation, as opposed to another county within California or a sister state. We agree with the trial court's interpretation of the statute.[4]

■ "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.'" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420]; accord, *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) " 'To the extent that uncertainty remains in interpreting statutory language, "consideration should be given to the consequences that will flow from a particular interpretation," ' . . ." and " '[w]e will not parse each literal phrase of a statute if doing so contravenes the obvious underlying intent, or leads to absurd or anomalous results.' . . ." (*People* v. *Adames* (1997) 54 Cal.App.4th 198, 212 [62 Cal.Rptr.2d 631], citations omitted.)

■ Viewed in isolation, section 1305, subdivision (c)(3) would seem to apply to a defendant arrested anywhere "outside of the county where the case is located," including a foreign country. But a reading of section 1305 as a whole shows this was not the Legislature's intent, because a more specific provision of that statute governs cases where the defendant is arrested in a foreign country.

Section 1305, subdivision (f) provides, "In all cases where a defendant is in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond . . . ." (See also § 1305, subd. (g).) Under subdivision (f), a surety is entitled to exoneration of bail only when the defendant is arrested by a foreign government *and* the prosecuting agency declines to seek extradition.

---

[4]Subdivision (c)(3) of section 1305 was amended in 1994 (Stats. 1994, ch. 649, § 1), after the forfeiture in this case. The People do not contest that Ranger is entitled to the ameliorative benefit of this amendment, if any. (See *County of San Bernardino* v. *Ranger Ins. Co.* (1995) 34 Cal.App.4th 1140, 1148 [41 Cal.Rptr.2d 57].)

The rule is both sensible and fair. If the surety is unable to secure the defendant's attendance due to his detention by a foreign government, and the People are unwilling to take the official steps necessary to obtain the defendant's return, the surety has been effectively precluded by other parties (the People and the foreign government) from fulfilling its promise to bring the defendant before the court. (See *People* v. *North Beach Bonding Co.* (1974) 36 Cal.App.3d 663, 675 [111 Cal.Rptr. 757]; *In re Samano* (1995) 31 Cal.App.4th 984, 992 [37 Cal.Rptr.2d 491] [object of bail is to ensure attendance of the principal].) But when the People attempt to obtain extradition as they did in this case, they have done all they can to bring the defendant before the court and it is not unjust for the surety which has assumed the risk of the defendant's nonappearance to bear the consequences. The surety has entered a contract with the defendant " 'which encompasses the risk that the [defendant] will not appear and has charged a fee which presumably is sufficient to provide a profitable enterprise despite occasional forfeitures of bail . . . .' " (*People* v. *Ramirez* (1976) 64 Cal.App.3d 391, 402 [134 Cal.Rptr. 511].)

Ranger cites two cases for the proposition that the exoneration provisions of section 1305 apply to cases where the defendant is arrested in a foreign country: *People* v. *Pugh* (1970) 9 Cal.App.3d 241, 251 [88 Cal.Rptr. 110] and *People* v. *United Bonding Ins. Co.* (1970) 12 Cal.App.3d 349, 354 [90 Cal.Rptr. 714]. Those cases are inapplicable here because they were based on an earlier version of section 1305 which did not specifically address the effect of the defendant's arrest in a foreign nation. (See Historical Note to former § 1305, 1965 & 1969 Amends., 51 West's Ann. Pen. Code (1982 ed.) foll. § 1305, pp. 734-735.)

### III.

### *The Trial Court Had Jurisdiction to Renew the Tolling Period and Enter Summary Judgment*

Turning to procedural challenges, Ranger claims that when the trial court terminated the tolling of the 180-day statutory period on May 2, 1995, it lost jurisdiction to take any further action on the motion to vacate the forfeiture. According to Ranger, the only power available to the court when the tolling period ended on May 2 was the entry of summary judgment within 90 days

under section 1306.[5] This would mean the order purporting to renew the tolling period on June 20, 1995, was void, the 90-day period for entering summary judgment ran from May 2, 1995, and the court lost jurisdiction to enter summary judgment when the 90-day period expired in August 1995.

■ This argument reflects a basic misunderstanding of what tolling means. Tolling temporarily suspends a statutory period from running. (See Black's Law Dict. (5th ed. 1979) p. 1334, col. 1.) When the tolling ends, the statutory period commences to run again at the point where it left off.

In this case, the 180-day period for obtaining an order to vacate the forfeiture was first tolled on January 31, 1994, after 123 days had elapsed. When the tolling period was terminated on May 2, 1994, 57 days of the 180-day period remained. On June 10, 1994, after 49 of these days had expired, the 180-day period was tolled again. This meant that when the second tolling period ended, Ranger would have eight days left to secure an order vacating the forfeiture. The second tolling period terminated on January 15, 1997. Adding the remaining 8 days of the 180-day period, plus the 5 days allotted when service of the notice of forfeiture is made by mail (see § 1305, subd. (b)), the 180-day period expired in this case on January 28, 1997. The parties filed a stipulation in the trial court confirming that this date marked the end of the 180 days.

The 90-day period for entering summary judgment under section 1306 thus began to run on January 29, 1997. The judgment entered on February 6, 1997, fell well within this period.

Ranger alternatively claims the trial court effectively tolled the 180-day period for a third time when it continued the motion to vacate the forfeiture until March 17, 1997, making the summary judgment entered on February 6 premature. But although the parties stipulated that the motion could be heard after the 180 days had expired, the court did not order further tolling, and the stipulation specifically recognized that the 180-day period ended on January 28, 1997.

We also observe that if there had been grounds to vacate the forfeiture of Ranger's bond when its motion was heard on March 17, Ranger could have

[5]Section 1306, subdivision (c) provides, "If, because of the failure of any court to promptly perform the duties enjoined upon it pursuant to this section, summary judgment is not entered within 90 days after the date upon which it may first be entered, the right to do so expires and the bail is exonerated."

moved to set aside the summary judgment. (See, e.g., *People* v. *American Bankers Ins. Co.* (1992) 4 Cal.App.4th 348, 350 [5 Cal.Rptr.2d 620].) Ranger could not have been prejudiced by the procedure followed by the trial court, even if the summary judgment had been premature.

The orders denying Ranger's motion to vacate the forfeiture and granting summary judgment are affirmed.

Stone (S. J.), P. J., and Yegan, J., concurred.

A petition for a rehearing was denied March 18, 1998. and appellant's petition for review by the Supreme Court was denied May 27, 1998.