[No. H019552. Sixth Dist. Dec. 3, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
AMERICAN CONTRACTORS INDEMNITY COMPANY, Defendant and
Appellant.

**COUNSEL**

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

Douglas C. Holland, County Counsel, J. Michael Hogan and D. Richard Barelli, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**BAMATTRE-MANOUKIAN, Acting P. J.**—A surety for a bail bond agent appeals from an order denying its motion to vacate forfeiture of bail and to exonerate the bond in a criminal action against defendant Eusebio Soza. The surety contends that the failure to enter a bench warrant for defendant into the National Crime Information Center (NCIC) system prevented defendant from being arrested and taken into custody and thus requires exoneration of all liability on the bond pursuant to Penal Code section 980, subdivision (b).[1] Subdivision (b) of section 980 was amended in 1998, and the amended version of the statute relied on by the surety became effective on January 1, 1999, shortly after the order appealed from herein. (Stats. 1998, ch. 520, § 2.) The surety argues that the amended version of the statute should apply to this case under *People* v. *Durbin* (1966) 64 Cal.2d 474 [50 Cal.Rptr. 657, 413 P.2d 433] (*Durbin*), which provides that a statute involving the "elimination of the power of forfeiture" or the "repeal of a civil penalty or forfeiture" applies retroactively, so long as the judgment is not final. (*Id.* at p. 478.) We agree with the surety. Under the facts of this case, the application of amended section 980, subdivision (b), would require the exoneration of the bond. We therefore reverse the order of the trial court and direct that a new order be entered granting the motion to vacate the forfeiture and to exonerate liability under the bail bond.

### BACKGROUND

On September 16, 1997, American Contractors Indemnity Company (American) posted bail bond No. AUL-2000760 for $125,000 for the release of defendant Eusebio Soza from custody pending criminal proceedings against him. On October 30, 1997, Soza failed to appear in court for pretrial

---

[1]All unspecified statutory references are to the Penal Code.

conference, and the bail was declared forfeited. A no-bail bench warrant was ordered issued. The bench warrant was recalled in error on December 30, 1997. It was ordered reissued on January 6, 1998, but was not entered into the national information system (NCIC) or the statewide warrant system (California Law Enforcement Telecommunication Systems).

On March 6, 1998, Dean Espinosa, an investigator for the bail agent Tony Diaz Bail Bonds, recognized Soza at a 7-Eleven store in Salinas. He detained Soza and called 911. Soza had with him two different forms of identification which had the same name but different photographs. When Salinas police officers arrived, they handcuffed Soza. Espinosa produced the file on Soza, containing a certified copy of the bail bond and photographs of Soza. At the scene the officers also obtained another photograph of Soza from the sheriff's department but were unable to make a positive identification. The officers refused Espinosa's request to have Soza fingerprinted. Espinosa asked them to run a warrant check on Soza. They did so but there was no warrant in the system and therefore the officers did not arrest Soza. Further, they warned Espinosa that he should also let Soza go. One of the officers told him to make sure to get a warrant in the system the next week.

On March 30, 1998, American filed a motion to set aside the forfeiture and exonerate the bond on the ground that the warrant had not been entered into the NCIC system. Section 980, subdivision (b), as it existed at the time, provided that "[t]he clerk shall require the appropriate agency to enter each bench warrant issued on a private surety-bonded felony case into the national warrant system (National Crime Information Center (NCIC))." American argued that the failure to comply with the statute and enter the warrant in the system directly resulted in this case in the release of Soza from custody and should therefore relieve it of liability on the bond.

On April 7, 1998, the district attorney filed a motion to reissue the no-bail warrant. The district attorney stated that defendant had recently been seen and contacted by the bail bondsman. "However, [defendant] was not arrested because the no bail warrant was not in the system and could not be verified by the Monterey County Sheriff's Department." The district attorney asked that the court reissue the warrant "and enter it into the system, so the defendant can be arrested." On April 9, 1998, the court ordered the bench warrant. It was issued on April 14, 1998.

On April 8, 1998, county counsel filed opposition to American's motion for exoneration of the bond. The county relied on two cases (*People v. Amwest Surety Ins. Co.* (1987) 195 Cal.App.3d 1396 [241 Cal.Rptr. 412], and *People* v. *Amwest Surety Ins. Co.* (1991) 229 Cal.App.3d 351 [280

Cal.Rptr. 58]) for the proposition that the surety in this case had not satisfied its burden of producing Soza. The county further argued "[h]ad the [L]egislature wanted a violation of Penal Code section 980 (b) to constitute grounds for exoneration, the legislature would have stated so in Penal Code section 980 (b) or in Penal Code section 1305 which governs grounds for exoneration."[2]

American's motion for exoneration was heard on April 13, 1998. The trial court tolled the time under section 1305 and gave American an additional 180 days from April 9, 1998, when the new warrant was ordered, to find Soza and bring him into custody.

Soza was not relocated. However, during this 180-day period, on August 19, 1998, the Legislature passed Senate Bill No. 1480 (1997-1998 Reg. Sess.), amending section 980, subdivision (b) to include the following language: "If the appropriate agency fails to enter the bench warrant into the national warrant system (NCIC), and the court finds that this failure prevented the surety or bond agent from surrendering the fugitive into custody, prevented the fugitive from being arrested or taken into custody, or resulted in the fugitive's subsequent release from custody, the court having jurisdiction over the bail shall, upon petition, set aside the forfeiture of the bond and declare all liability on the bail bond to be exonerated." (Stats. 1998, ch. 520, § 2.) The amendment was signed into law on September 15, 1998, and made effective January 1, 1999. (*Ibid.*)

On October 6, 1998, American filed a new motion to vacate the forfeiture of bail. In this motion, American relied on the amendment to section 980, subdivision (b), arguing that it applied retroactively pursuant to *Durbin, supra,* 64 Cal.2d 474, and *County of San Bernardino* v. *Ranger Ins. Co.* (1995) 34 Cal.App.4th 1140 [41 Cal.Rptr.2d 57]. County counsel opposed the motion on the ground that the amended version of the statute was not yet effective, without however distinguishing *Durbin* or the other authorities cited by American.

The extended 180-day time for the reissued warrant expired and summary judgment was entered on the forfeiture on October 19, 1998, pursuant to section 1306.

---

[2]Section 1305 provides that if the defendant is taken into custody or appears voluntarily within 180 days from the date of forfeiture of the bond, "the court shall, on its own motion . . . direct the order of forfeiture to be vacated and the bond exonerated." (§ 1305, subd. (c)(1).)

American's motion to vacate the forfeiture and exonerate the bond was argued and taken under submission on November 9, 1998.[3] On November 23, 1998, the motion was denied in a minute order without comment by the court.

## DISCUSSION

We first address the issue whether the amended form of section 980, subdivision (b), falls within the rule of *Durbin, supra,* 64 Cal.2d 474, and should be applied retroactively to this case. ■ This presents a purely legal issue, which we review de novo. (*Vallejo Development Co.* v. *Beck Development Co.* (1994) 24 Cal.App.4th 929, 937 [29 Cal.Rptr.2d 669]; *People* v. *Ranger Ins. Co.* (1998) 61 Cal.App.4th 812, 818 [71 Cal.Rptr.2d 806].) We conclude the statute should be given retroactive effect here. Next we decide whether the statute, if applied to the facts of this case, requires that the forfeiture of bail be set aside and liability on the bond be exonerated. Since the factual record before us establishes that the defendant Soza would have been taken into custody and arrested but for the failure to enter the warrant into the warrants systems, we conclude that the bail forfeiture must be vacated and the bond exonerated in this case.

In 1998, section 980, subdivision (b) provided that, "[t]he clerk shall require the appropriate agency to enter each bench warrant issued on a private surety-bonded felony case into the national warrant system (National Crime Information Center (NCIC))." This statutory duty to enter a warrant into the warrants system was added to the statute in 1997. (Stats. 1996, ch. 555, § 1.) It was intended to increase the likelihood of the return to custody of defendants who have fled the state, to alert law enforcement when approaching a fugitive and to enable private individuals working for bail bond companies to secure the arrest of a fleeing defendant by providing the necessary legal documentation. (Staff Comments, Sen. Appropriations Com., Fiscal Summary of Sen. Bill No. 1630 (1995-1996 Reg. Sess.) May 13, 1996.) Although the statute imposed a mandatory duty to enter a warrant into the national warrants system, it did not provide any remedy for the failure to do so.

This was added by another amendment the following year, in 1998, when the Legislature passed Senate Bill No. 1480. Senate Bill No. 1480 was sponsored by associations of bail agents and bail insurance companies. It added the following language to section 980, subdivision (b): "If the appropriate agency fails to enter the bench warrant into the national warrant system (NCIC), and the court finds that this failure prevented the surety or

---

[3]No transcript of these proceedings is contained in our record on appeal.

bond agent from surrendering the fugitive into custody, prevented the fugitive from being arrested or taken into custody, or resulted in the fugitive's subsequent release from custody, the court having jurisdiction over the bail, shall, upon petition, set aside the forfeiture of the bond and declare all liability on the bail bond to be exonerated." The amended statute became effective January 1, 1999, after the order appealed from herein, which was entered November 23, 1998.

■ American contends that the 1998 amendment to section 980 should be applied retroactively pursuant to *Durbin, supra,* 64 Cal.2d 474, and *County of San Bernardino* v. *Ranger Ins. Co., supra,* 34 Cal.App.4th 1140. In *Durbin,* the surety moved to set aside forfeitures of bail because the defendant was being held in custody in Tennessee. At the time, section 1305 provided the trial court with discretion to discharge a forfeiture of a bail bond if the defendant was unable appear in court because of "detention by civil . . . authorities." The trial court denied the motions and the appellate court reversed on the ground that the court had not exercised its discretion. After a remand, the trial court exercised its discretion and again denied the motions. However, in between the time the appellate court issued its remittitur reversing the first orders denying relief and the time the trial court again denied the motions, section 1305 was amended. Where the former statute had provided the trial court with discretion to set aside a forfeiture under certain conditions, the amended statute replaced the word "may" with "shall," thereby making mandatory the granting of relief under those conditions, including "detention by civil . . . authorities."

On appeal from the trial court's second orders denying relief from forfeiture, the surety argued that the amendment to section 1305 should be applied retroactively and that it required the trial court to discharge the bail forfeitures. The court in *Durbin* first recognized "[t]he general rule of construction found in the common law and embodied in section 3 of the Penal Code . . . that when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively. [Citations.]" (*Durbin, supra,* 64 Cal.2d 474, 478.) The court's analysis then continued as follows: "However, the amendment requiring the court to set aside forfeitures in cases where it previously had discretion to decline to do so amounts to the elimination of the power of forfeiture in these cases, and it is settled that the repeal of a civil penalty or forfeiture running either to an individual or the state, at any time before final judgment, extinguishes the right to recover the penalty. [Citations.]" (*Ibid.*)

The *Durbin* court also relied on the rule set forth in *In re Estrada* (1965) 63 Cal.2d 740, 744-745 [48 Cal.Rptr. 172, 408 P.2d 948], that ". . . if an

amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final, it applies rather than the old statute in effect when the prohibited act was committed." (*Durbin, supra,* 64 Cal.2d at p. 479.) The court found that what was said in *In re Estrada* regarding an amended statute lessening criminal punishment "equally applies to the reduction or elimination of civil penalties or forfeitures." (*Ibid.*) The court in *Durbin* concluded that since the orders in the present appeal denying relief from forfeitures were not yet final, the amended version of section 1305 applied and required that the forfeitures be set aside.

The holding in *Durbin* was recently applied in *County of San Bernardino v. Ranger Ins. Co., supra,* 34 Cal.App.4th 1140. In that case, after bail was declared forfeited, the surety's agents arrested the defendant and returned him to custody. Believing the bond had been exonerated, the surety did not bring a motion to vacate the forfeiture, and after the requisite statutory time had passed summary judgment was entered on the forfeiture. On appeal, the surety argued that its surrender of the defendant into custody of the sheriff effected an exoneration as a matter of law under a recent amendment to section 1305. The version of section 1305 in effect at the time of the proceedings in the trial court was open to the interpretation that the surety was required to move for an order discharging the forfeiture upon notice and a hearing, and that the 180-day period in which to do so was jurisdictional. However, during the pendency of the appeal, section 1305 was amended to provide that if the defendant is surrendered within the 180-day period, "the court *shall,* on its own motion . . . direct the order of forfeiture to be vacated and the bond exonerated." (Stats. 1994 ch. 649 § 1, italics added.)

The court found on the basis of *Durbin* that "a bail bond surety is entitled to the benefit of a statutory change in a case that is not yet final." (*County of San Bernardino* v. *Ranger Ins. Co., supra,* 34 Cal.App.4th at p. 1148.) County counsel did not disagree with this proposition but argued that the state's right to the forfeiture was vested because the money had already been paid and received by the governmental entities. *Durbin* had held that "[t]he test to be applied in determining the effect to be given the repeal of penalty and forfeiture statutes is whether the rights affected are vested or inchoate." (*Durbin, supra,* 64 Cal.2d at pp. 478-479.) The court in *County of San Bernardino* disagreed with the county's position, finding that " '[a] statutory remedy does not vest *until final judgment*' [citation]; a judgment does not become final so long as the action in which it is entered remains pending [citation] and an action remains pending until final determination on appeal [citation]." (*County of San Bernardino* v. *Ranger Ins. Co., supra,* 34 Cal.App.4th at p. 1149, italics in original.) "It thus becomes plain," the court continued, "that the *Durbin* court's reference to 'vested' rights under a

repealed penalty statute was to a case which had become final." (*Ibid.*) As *Durbin* pointed out, when the Legislature amends a statute to lessen a punishment or penalty, it has made a determination that the former statute was too severe. The "inevitable inference" is that "the Legislature must have intended that the new statute . . . should apply to every case to which it constitutionally could apply, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Durbin, supra,* at p. 479; *County of San Bernardino* v. *Ranger Ins. Co., supra,* 34 Cal.App.4th at p. 1149.)

The retroactivity rule enunciated in *Durbin* was again acknowledged in *People* v. *Ranger Ins. Co., supra,* 61 Cal.App.4th 812, where the court retroactively applied an amended version of section 1305, stating in a footnote, "Subdivision (c)(3) of section 1305 was amended in 1994 [citation], after the forfeiture in this case. The People do not contest that Ranger is entitled to the ameliorative benefit of this amendment, if any." (61 Cal.App.4th at p. 818, fn. 4.) The court in that case also noted the general rule that ". . . bail forfeitures are generally disfavored and the statutes affecting forfeiture procedures must be interpreted when possible to avoid this result." (*Id.* at p. 816; see also *People* v. *Ranger Ins. Co.* (1998) 66 Cal.App.4th 1549, 1552 [78 Cal.Rptr.2d 763] ["Because the law abhors forfeitures, [the bail forfeiture] statutes are to be strictly construed in favor of the surety."].)

Most recently, this court addressed the issue of retroactivity as it applies to the bail bond statutes in *People* v. *Ranger Ins. Co.* (1999) 76 Cal.App.4th 326 [90 Cal.Rptr.2d 230]. That case involved an amendment to section 1305, which added the requirement that a bail bond forfeiture be declared in open court immediately upon defendant's failure to appear. On appeal from the denial of a motion to set aside a forfeiture, the surety argued that *Durbin* should apply to make the amended statute retroactive and discharge the forfeiture. We disagreed. We found that, unlike the amendment at issue in *Durbin,* the amendment in this case "does not deprive the trial court of any discretion to set aside a forfeiture and does not amount to a reduction or elimination of the court's power of forfeiture. To the contrary, the 1999 amendment merely imposes an additional procedure to establish a bail bond forfeiture." The purpose of the amendment was merely to give bail agents immediate notice of the forfeiture in order to facilitate pursuit of the fugitive. This was, the legislative history revealed, " 'a minor technical change to existing law.' " (76 Cal.App.4th at p. 330.)

The amendment in the case before us now does not similarly involve a "minor technical change." We conclude under *Durbin* and the cases following it that the amended version of section 980, subdivision (b), applies

retroactively in this case. Here, as in *Durbin,* the statute prior to its amendment was open to the interpretation that the trial court had the discretion to deny a motion to vacate a forfeiture, even if the warrant had not been properly entered in the system. As amended, the statute requires that the court set aside the bail forfeiture if the warrant was not entered and if the court finds that this failure to enter the warrant prevented the fugitive from being arrested. The court's power to order a forfeiture was therefore eliminated by the amendment. The change in the statute clearly falls within the language of *Durbin,* by "requiring the court to set aside forfeitures in cases where it previously had discretion to decline to do so." (*Durbin, supra,* 64 Cal.2d at p. 478.) Consequently it "amounts to the elimination of the power of forfeiture" and must be applied retroactively to cases, such as this one, not final prior to its effective date. (*Ibid.*)

▪ The county argues here that even if *Durbin* requires retroactive application of the amended statute, the court's order should be affirmed in this case because amended section 980, subdivision (b), requires both that the warrant was not entered into the system *and* that the court find "this failure prevented the surety or bond agent from surrendering the fugitive into custody, prevented the fugitive from being arrested or taken into custody, or resulted in the fugitive's subsequent release from custody." The county argues that the court made no such finding in this case and that under the circumstances we must presume the court found against the surety and therefore affirm the decision in the absence of a demonstrated abuse of discretion. We disagree.

There is no indication in the record before us that the trial court accepted the surety's argument that the amended version of section 980, subdivision (b), applied retroactively and nonetheless denied the motion on the ground that the factual predicate for the application of the amended statute was lacking. Even if we were to presume the trial court followed *Durbin* and applied the amended statute, the factual showing by the surety virtually compels the conclusion that the failure to enter the warrant in this case prevented the bond agent from surrendering defendant into the custody of the police officers for arrest. The evidence was that the bond agent recognized defendant, detained him, and called 911. Police officers arrived, defendant was handcuffed, and the bond agent produced a filed containing documentation of the bail bond and photographs of defendant. A warrant check was run but it revealed no warrant for defendant's arrest, and it was for that reason that the officers did not arrest defendant. They then advised the bail agent to let him go and make sure to get a warrant entered into the system. Furthermore, the district attorney conceded that the lack of a warrant in the warrants system prevented defendant's arrest. In a declaration in support of a motion to reissue the no-bail warrant, the district attorney stated

that the bail bond agent had contacted the defendant but that "[defendant] was not arrested because the no bail warrant was not in the system and could not be verified by the Monterey County Sheriff's Department." She asked the court to reissue the warrant "and enter it into the system, so the defendant can be arrested."

The county relies here, as it did below, on the two *Amwest* cases (*People v. Amwest Surety Ins. Co., supra,* 195 Cal.App.3d 1396 and *People v. Amwest Surety Ins. Co., supra,* 229 Cal.App.3d 351), arguing that the trial court could have found that the surety had not satisfied its burden of producing the defendant. These cases are wholly distinguishable. In the first case, the defendant was never located by the surety. The surety discovered that county authorities had failed to disclose that the defendant was locatable in another state but that the authorities had decided not to extradite him. The surety's motion to vacate the forfeiture of bail was denied and the Court of Appeal affirmed on the ground that the bail bond contract did not include an implicit duty by the authorities to disclose such information to the surety.[4]

*People* v. *Amwest Surety Ins. Co., supra,* 229 Cal.App.3d 351, is also distinguishable. In that case, the surety's investigators located the defendant but did not arrest him because they were aware he was a professional boxer and they were afraid of him. They called the police to assist in the arrest. The police arrived and ran a warrant check which turned up negative and therefore they refused to arrest the defendant. In the appeal by the surety from the denial of its motion to vacate the forfeiture under these facts, the court focussed on the language of section 1305, which required that the forfeiture be set aside if the bail agent "should surrender the defendant to the court or to custody." (229 Cal.App.3d at p. 355.) The court held that the word "surrender" conveyed the meaning "that the surety will take physical custody of a defendant before attempting to deliver the defendant to the court, sheriff, or police." (*Id.* at p. 356.) Since that did not occur in this case, the surety had not complied with the statute. In our case, in contrast, the surety did everything possible to surrender the defendant into custody, but was prevented from doing so only because there was no warrant in the system.

In sum we believe the application of the amended section 980, subdivision (b) to the record in this case requires that the forfeiture be set aside and the bond exonerated. We therefore do not find it necessary to remand the matter for any further proceedings in the trial court.

---

[4]Section 1305 was amended in 1994 to provide that if the district attorney elects not to seek extradition, the surety is released from obligation on the bond. Thus this case has been superseded by statute. (Stats. 1995, ch. 434, § 1.)

## DISPOSITION

We reverse the order denying the surety's motion to set aside the forfeiture and we direct that the trial court enter a new order vacating the forfeiture and exonerating all liability on bail bond No. AUL-2000760, pursuant to Penal Code section 980, subdivision (b). Each party to bear its own costs on appeal.

Wunderlich, J., and Mihara, J., concurred.