Filed 12/30/22  P. v. Mena-Barba CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>JOSE JUAN MENA-BARBA,<br><br>     Defendant and Appellant. | F082957<br><br>(Super. Ct. No. 18CR-04292)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Steven K. Slocum, Judge.

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Defendant Jose Juan Mena-Barba was charged with multiple counts related to his molestation of a minor family member beginning when the minor was in kindergarten or the first grade and defendant was 18 years old, and continuing for years.

A jury convicted defendant of three counts of forcible lewd acts on a child under the age of 14 (Pen. Code, § 288, subd. (b)(1); counts 2, 3 & 7), one count of lewd acts on a child under the age of 14 (§ 288, subd. (a); count 1), and one count of sexual penetration of a child 10 years of age or younger (§ 288.7, subd. (b); count 8). (Undesignated statutory references are to the Penal Code.) He was sentenced to a determinate term of 20 years' imprisonment, plus an indeterminate term of 15 years to life.

On appeal, defendant contends his conviction for sexual penetration of a child 10 years of age or younger must be reversed because it violates the federal and state ex post facto clause. Defendant also raises several claims of prosecutorial misconduct and asserts, to the extent those issues were forfeited for failure to object, he received ineffective assistance of counsel. Defendant also claims he should be resentenced based on the recent passage of Assembly Bill No. 124 (2021–2022 Reg. Sess.) (Assembly Bill 124). The People agree the sexual penetration conviction in count 8 violates ex post facto laws and that defendant should be resentenced in accordance with Assembly Bill 124. However, the People do not agree there was prosecutorial misconduct or that defendant received ineffective assistance of counsel.

We modify defendant's conviction in count 8 to the lesser included offense of sexual penetration of a minor under 18 years of age under section 289, subdivision (h) and remand the matter for resentencing, at which time Assembly Bill 124 will apply. In all other respects, we affirm the judgment.

# FACTUAL BACKGROUND

A. testified defendant molested her from when she was six years old to about 13 years old, when she was in the seventh grade in middle school. Defendant was 18 years old at the time he began molesting A. A. lived with defendant "[b]asically all [her] childhood." Defendant lived with A.'s family in A.'s first house "off of Lander," where he began being inappropriate with her. The house on Lander burned down when A. was approximately six years old and she was in the first grade. A. then lived at two different places on Third Street, which A. referred to as the "blue house" and the "yellow house," and then she moved to a mobilehome on Lander. When A. was living at the "blue house" on Third Street, defendant did not live with her, but he would still come over and he would watch A. when her parents were gone. When A. moved to the "yellow house" on Third Street, defendant lived in an RV on the property but not in the same house as A. When A. moved to the mobilehome on Lander with her family, defendant again lived on the property but not in A.'s home.

Defendant's inappropriate behavior towards A. occurred while A. lived in the first house on Lander, the two homes on Third Street, and when she moved back to Lander in the mobilehome. A. explained defendant would touch her vagina and make her touch him and rub his penis. A. testified defendant touched her vagina "[e]very time he got a chance when [her] parents weren't home," which was more than 10 times. She stated defendant put his fingers inside her vagina "[e]ver since I can remember," "[b]ack when I was six." Defendant did this "[a] lot of times," and A. described that it hurt. The touching occurred in the living room. During this time, when A.'s parents were not home, defendant would also rub his penis on A. under her clothing. Defendant would open A.'s pants, pull her underwear down, and expose his penis by opening his zipper. He put his penis on her vagina more than once at the Lander house. To make A. touch his penis, defendant would grab her hand and put it on his erect penis and try to move her hand, but she would pull her hand away. A. testified there were times defendant would

3.

have his hand under her underwear and, with his other arm, he would touch his own penis and be "jacking off." While defendant was doing these things to A. at the house on Lander, he would "talk dirty" to her. During the time defendant was sexually abusing A., he would threaten her "[a]ll the time"; he told her she "better not say anything," and "if [she said] something, something bad's going to happen to [her] or it's going to go worse for [her]." Defendant's threats scared A.

A. testified the same touching and threats continued while she was living at the two different houses on Third Street and when she later moved back to Lander. When A. moved to the first house on Third Street, which A. referred to as the "blue house," she was still in elementary school. A. moved to a second house on Third Street, which she referred to as the "yellow house," when she was almost in middle school. She moved back to Lander to a mobilehome when she was in middle school. The inappropriate touching happened multiple times at each of the different houses. Defendant put his penis or his fingers in her vagina and touched her vagina with his hand multiple times at the first house on Lander, the blue house, the yellow house, and the mobilehome on Lander. The sexual abuse stopped when A. was in middle school, which she felt was because she started maturing.

A. explained most of the instances of defendant molesting her blended together, but one incident stood out. The incident occurred when A. was in middle school and living at the yellow house. A.'s parents were out of town and defendant tried to rape her. A. was in the living room and defendant "was trying to pin [her] down, take off [her] clothes, and put his penis in [her] vagina." A. started running around the living room and kitchen to get away. A. also ran into a bedroom where her siblings were watching television, and defendant followed her. Defendant eventually made A. go with him by threatening her that it would be worse for her if she did not. A. did not think her siblings were looking at her because they did not do or say anything. When A. went with defendant to the living room, he grabbed her and rubbed his penis on her vagina.

4.

Defendant then put his penis inside her vagina. She recalled it being painful and that it left her with bruises and redness. She testified this incident was not the first or last time defendant put his penis inside her vagina, it just stood out as a specific incident she remembered.

A. did not come forward to law enforcement until she was about 20 or 21 years old. She decided to come forward at that time because she was a mother and had children of her own she needed to protect. A. first told her mother about it when she was 19 years old, but her mother did not believe her. She also told her boyfriend's mother when A. was 19 years old. A. told her child's father about the abuse, as well as her boyfriend. A. testified it was difficult for her to talk about what happened to her because it brought back unpleasant memories. A. testified she moved out of her parents' house when she was 20 years old. A. later moved back to live with her mother while defendant lived in the RV in the back of the property. During that time, her mother would take care of her children when A. was at school; defendant was not around her children.

Two pretext telephone calls between A. and defendant were recorded during the investigation. In the first call, A. asked defendant, "Do you remember how my parents would leave the ranch and you would touch me in my private areas?" And defendant responded, "What about it?" Defendant told A. she was the one who would get in the bed. When A. asked defendant why he would touch her in her private parts he responded, "Because you started it." Even when A. reminded defendant she was a little girl, defendant maintained she was the one who "started it" and that he could not "remember everything too well."

In the second recorded pretext call, A. told defendant she needed him to apologize to her and he responded, "[W]hy do I need to apologize to you? If I didn't do anything to you." Then defendant started telling A. that she owed him $100 she borrowed from him and that she should be apologizing to him. Defendant then said, "First pay me what you owe me and then I'll tell you." But then defendant continued to tell A. that he did not

5.

need to apologize for anything and that she needed to apologize to him for swearing at him when she was younger.

A.'s interview with Detective Luis Ortiz took place over multiple conversations. A. testified she did not tell Detective Ortiz defendant "raped" her using that specific word, but she told the detective that defendant penetrated her with his finger and put his penis in her vagina. A. initially could not remember whether she told Detective Ortiz defendant would rub his penis on her vagina or make her hold his penis, but after reviewing the police report, she testified she told Detective Ortiz defendant put his penis inside of her. She also reported to Detective Ortiz that defendant threatened her and she sustained physical injuries after the abuse. In her interview with Detective Ortiz, A. said she did not recall whether defendant talked dirty to her when he touched her or abused her.

Detective Ortiz testified that A. did not use the "exact words" that defendant put his penis in her vagina, but she told him defendant touched her and that there was penetration, which could have been digital or penile. Detective Ortiz testified A. said defendant probably talked dirty to her but she tried to forget it. Detective Ortiz did not recall A. telling him defendant threatened her and did not tell him she was physically injured from the abuse.

In connection with the alleged sexual abuse, defendant was charged with seven counts of forcible lewd acts upon a child under the age of 14 years old, each alleging different instances of conduct in violation of Section 288, subdivision (b)(1): count 1 related to the first time defendant touched A.'s vagina with defendant's hand on or between June 24, 2003 and October 14, 2009; count 2 related to any time between the first and last time defendant touched A.'s vagina with defendant's hand on or between June 24, 2003 and October 14, 2009; count 3 related to the last time defendant touched A.'s vagina with defendant's hand on or between June 24, 2003 and October 14, 2009; count 4 related to the first time defendant rubbed his penis on A.'s vagina on or between

6.

June 24, 2003 and October 14, 2009; count 5 related to any time between the first and last time defendant rubbed his penis on A.'s vagina on or between June 24, 2003 and October 14, 2009; count 6 related to the last time defendant rubbed his penis on A.'s vagina on or between June 24, 2003 and October 14, 2009; and count 7 related to a time when defendant had A. touch his penis with A.'s hand, on or between June 24, 2003 and October 14, 2009.  Defendant was also charged with one count of sexual penetration of a child 10 years or younger on or between June 24, 2003 and October 14, 2007, in violation of section 288.7, subdivision (b) (count 8).

On May 20, 2021, the jury found defendant guilty of three of the charged counts of forcible lewd acts on a child who is under the age of 14 years old (§ 288, subd. (b)(1); count 2 (defendant's hand to A.'s vagina any time between first and last time), count 3 (defendant's hand to A.'s vagina the last time), and count 7 (defendant had A. touch defendant's penis with A.'s hand)) and sexual penetration of a child 10 years of age or younger (§ 288.7, subd. (b); count 8).  The jury found defendant not guilty of the forcible lewd act charged under count 1 but found him guilty of the lesser offense of a lewd or lascivious act on a child under 14 years old pursuant to section 288, subdivision (a).  The jury was unable to reach a verdict as to counts 4, 5, and 6, which related to allegations defendant touched his penis to A.'s vagina.  These charges were ultimately dismissed.

On June 21, 2021, the court sentenced defendant to a determinate term of 20 years' imprisonment, composed of six years on count 2, six years on count 3, six years on count 7, and two years on count 1, plus an indeterminate term of 15 years to life on count 8.

## DISCUSSION

### I.      Count 8 Must be Reversed on Ex Post Facto Grounds

Defendant contends his conviction of sexual penetration of a child under 10 years of age in count 8 violates the constitutional prohibition against ex post facto laws because

the conduct may have predated the September 20, 2006, effective date of section 288.7. The People agree. We also agree and conclude defendant's conviction for violating section 288.7, subdivision (b) must be reversed, but may be modified to a violation of section 289, subdivision (h), which is a lesser included offense. In addition, the matter will be remanded to the trial court for resentencing.

### A.    Relevant Factual and Procedural History

The first amended information alleged that count 8 occurred "[o]n or between June 24, 2003 and October 14, 2009." When jury instructions were discussed, the prosecutor realized the end date was incorrect because a violation of section 288.7 involves conduct against a child who is 10 or younger and the victim turned 11 in 2007. Therefore, the court subsequently granted the prosecutor's request to amend the date range so that it ended on October 14, 2007. The verdict form for count 8 reflected this amendment.

The jury instructions failed to specify that a conviction for section 288.7 could not be based on conduct that occurred before September 20, 2006, the effective date of section 288.7. The instructions read: "The defendant is charged with engaging in sexual penetration with a child ten years of age or younger in violation of … Section 288.7, Subdivision (b), sometime during the period of June 24, 2003, and October 14, 2007. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

In addressing count 8 in the context of the unanimity requirement, the prosecutor pointed out that, so long as the jurors agreed on the same act underlying the charge, they could pick an act from any time period within the date range, including the time when A. was six years old and living at the house on Lander.

The jury found defendant guilty of count 8.  The verdict form read: "We the jury in the above-entitled case find the defendant … Guilty of a violation of Section 288.7(b) …, Oral Copulation or Sexual Penetration With Child 10 Years Old or Younger, a felony, having occurred on or between June 24, 2003 and October 14, 2007."

### B.     Standard of Review

The prosecution bears the burden of proving that the crime occurred on or after the effective date of the statute.  (*People v. Hiscox* (2006) 136 Cal.App.4th 253, 256.)  The record must show beyond a reasonable doubt that the ex post facto clauses were not violated.  "[W]here an instruction violates the ex post facto bar, the error is of federal constitutional dimension, reviewable under the *Chapman* harmless-beyond-a-reasonable-doubt standard."  (*People v. Farley* (1996) 45 Cal.App.4th 1697, 1710, fn. omitted; see *Chapman v. California* (1967) 386 U.S. 18, 24.)

### C.     Applicable Law

The federal Constitution forbids the states from passing ex post facto laws. (U.S. Const., art. I, § 10.) The California Constitution also prohibits ex post facto laws.  (Cal. Const., art. I, § 9.)  Both ex post facto laws prohibit """"any statute [1] which punishes as a crime an act previously committed, which was innocent when done; [2] which makes more burdensome the punishment for a crime, after its commission, or [3] which deprives one charged with crime of any defense available according to law at the time when the act was committed …."""  (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 294; see *Collins v. Youngblood* (1990) 497 U.S. 37, 42; *People v. White* (2017) 2 Cal.5th 349, 360.)

Section 288.7 took effect on September 20, 2006.  (Stats. 2006, ch. 337, § 9.)  The statute created a "new offense imposing an indeterminate life sentence for sexual intercourse, sodomy, oral copulation, or sexual penetration of 'a child who is 10 years of age or younger.'"  (*People v. Cornett* (2012) 53 Cal.4th 1261, 1267.)  "Therefore, any

9.

application of section 288.7 to conduct that occurred prior to September 20, 2006, is a violation of the state and federal ex post facto clauses." (*People v. Rojas* (2015) 237 Cal.App.4th 1298, 1306 (*Rojas*).)

### D. Analysis

Both parties agree defendant's conviction for sexual penetration of a child who is 10 years of age or younger under section 288.7, subdivision (b) stands in violation of ex post facto principles. Although defendant did not make an ex post facto challenge below, the People concede the claim may be raised for the first time on appeal. (See *People v. Hiscox*, *supra*, 136 Cal.App.4th at p. 259 [concluding ex post facto claim was not forfeited, reasoning "[w]hen a failure of proof by the prosecution results in a trial record that is inadequate to support a sentence," an objection at sentencing is not required to preserve a claim of error]; accord, *Rojas*, *supra*, 237 Cal.App.4th at p. 1306.)

In *Rojas*, the information alleged the defendant perpetrated violations of section 288.7 after September 20, 2006, when the statute took effect. (*Rojas*, *supra*, 237 Cal.App.4th at p. 1302.) However, the jury was problematically instructed it had to find the defendant committed the offense "'on a date or dates after August 12, 2005.'" (*Id.* at p. 1303.) The *Rojas* court concluded the instruction allowed the jurors to find the defendant guilty even if the offense was committed prior to the effective date of section 288.7. (*Rojas*, at p. 1307.) Thus, the jury could have based their conviction on conduct that preceded the statute's effective date. (*Id.* at p. 1302.) The court noted, "If the jury's verdict … was based on an event that took place when the victim was three years old, the crime could have happened anytime between December 2005 and December 2006, and most of that period fell outside of the date when section 288.7 went into effect, i.e., September 20, 2006." (*Id.* at p. 1307.) As a result, the appellate court reversed the defendant's conviction, finding that the record allowed for reasonable doubt over whether the section 288.7 conviction was based on an act that occurred on or after September 20,

2006.  (*Rojas*, at p. 1307.)  The *Rojas* court noted "'[i]t would be inappropriate … to review the record and select among acts that occurred before and after that date, or to infer that certain acts probably occurred after that date.'"  (*Ibid.*, quoting *People v. Hiscox*, *supra*, 136 Cal.App.4th at p. 261.)  "'For a court to hypothesize which acts the jury may have based its verdicts on, or what dates might be attached to certain acts based on ambiguous evidence, would amount to "judicial impingement upon the traditional role of the jury."'"  (*Rojas*, at p. 1307, quoting *Blakely v. Washington* (2004) 542 U.S. 296, 309.)

*Hiscox* involved an ex post facto claim in an analogous context under the "One Strike Law" (§ 667.61), which became effective on November 30, 1994.  (*People v. Hiscox*, *supra*, 136 Cal.App.4th at p. 257.)  The *Hiscox* defendant was convicted of committing 11 lewd acts against multiple victims based on conduct alleged to have been committed between 1992 and 1996.  (*Ibid.*)  The evidence presented at trial failed to show whether the offenses happened before or after section 667.61 took effect.  (*Hiscox*, at p. 261.)  Under the record, it could not be said the evidence left "no reasonable doubt that the underlying charges pertained to events occurring on or after November 30, 1994."  (*Ibid.*)  "The evidence did not reliably connect the various charges to any time frame other than the period between 1992 and 1996.  The court did not instruct the jury that its findings under section 667.61 were restricted to offenses committed on or after November 30, 1994, and defense counsel raised no ex post facto objection."  (*Hiscox*, at p. 258.)  Consequently, the appellate court vacated the defendant's One Strike sentence.  (*Id.* at p. 262.)

Here, the record allows for reasonable doubt over whether count 8 was based on an act that occurred on or after the effective date of section 288.7.  (See *Rojas*, *supra*, 237 Cal.App.4th at p. 1307.)  The information, as amended, alleged that the sexual penetration for count 8 occurred sometime between June 24, 2003, through October 14,

11.

2007. Thus, the charging document allowed for the possibility that the offense was committed before September 20, 2006.

Additionally, the evidence is such that the jury could "draw equally plausible contrary inferences" from the evidence as to whether or not the crime was committed after the effective date of the statute. (*People v. Riskin* (2006) 143 Cal.App.4th 234, 245.) A. could not recall specifically when each act of digital penetration occurred but testified that it occurred on a regular basis when she was between the ages of six and 13 years old. Because A. was born in October of 1996, these incidents would have occurred between October 2002 and October 2009. Since A. did not provide testimony regarding specific times that defendant penetrated her vagina, it cannot be said that the jury necessarily based its verdict on conduct that took place on or after September 20, 2006. It would be inappropriate for us, as the reviewing court, to "'review the record and select among acts that occurred before and after that date, or to infer that certain acts probably occurred after that date.'" (*Rojas*, *supra*, 237 Cal.App.4th at p. 1307.) Consequently, we cannot conclude beyond a reasonable doubt that the jury based its verdict on conduct postdating the enactment of section 288.7 on September 20, 2006. (See *Rojas*, at p. 1306.)

"When a conviction is contrary to law, but the evidence shows that a defendant is guilty of a lesser included offense, a court can reduce the conviction to the lesser included offense and affirm the judgment as modified." (*People v. Eagle* (2016) 246 Cal.App.4th 275, 279.) "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]" (*People v. Birks* (1998) 19 Cal.4th 108, 117–118.)

Section 288.7, subdivision (b) makes it illegal to "engage[] in oral copulation or sexual penetration … with a child who is 10 years of age or younger." And section 289,

subdivision (h) penalizes "any person who participates in an act of sexual penetration with another person who is under 18 years of age." Here, the facts alleged in the accusatory pleading pertaining to the charged violation of section 288.7, subdivision (b) (count 8)—sexual penetration of a child 10 years of age or younger—include all of the elements of a violation of section 289, with the added element that the child was 10 years old or younger. This is because the definition of "sexual penetration" is the same for both section 288.7, subdivision (b) and section 289. (*People v. Saavedra* (2018) 24 Cal.App.5th 605, 613–614.) And sexual penetration of a child under 18 years of age necessarily includes the sexual penetration of a child 10 years of age or younger. Thus, a violation of section 288.7, subdivision (b) based on sexual penetration necessarily involves a violation of section 289, subdivision (h). Accordingly, sexual penetration of a minor under 18 years of age under section 289, subdivision (h) is a lesser included offense of sexual penetration of a child 10 years of age or younger under section 288.7, subdivision (b). (See *People v. Lopez* (2020) 9 Cal.5th 254, 269–270 [under the accusatory pleading test, """"if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former""""].)

The parties agree, as do we, the proper remedy is to modify defendant's judgment and reduce defendant's conviction in count 8 to the lesser included offense of sexual penetration of a minor under 18 years of age under section 289, subdivision (h), which was in existence during the time defendant committed the sexual penetration. In addition, the matter will be remanded for resentencing on this count.

## II. Prosecutorial Misconduct

Defendant alleges the prosecutor engaged in four separate instances of misconduct during closing arguments by (1) exhorting jurors "not to consider the fact that certain logical prosecution witnesses were not called," (2) admonishing jurors to disregard any

notion that they would have liked to have seen more evidence in her case-in-chief, (3) stating that "defendants are convicted 'day in and day out,'" thereby lessening the beyond a reasonable doubt standard, and (4) stating that the presumption of innocence was over. The People argue defendant failed to object to all but the first claim at trial and thereby forfeited the last three claims. To the extent these claims are forfeited, defendant claims he received ineffective assistance of counsel.

### A.  Standard of Review and Applicable Law

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44; see *People v. Mendoza* (2007) 42 Cal.4th 686, 700; *People v. Farnam* (2002) 28 Cal.4th 107, 167.) "The focus of the inquiry is on the effect of the prosecutor's action on the defendant, not on the intent or bad faith of the prosecutor." (*Mendoza*, *supra*, at p. 700.) "'A defendant's conviction will not be reversed for prosecutorial misconduct, however, unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct.'" (*People v. Tully* (2012) 54 Cal.4th 952, 1010.)

"To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v. Frye* (1998) 18 Cal.4th 894, 970, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; see *People v. Spector* (2011) 194 Cal.App.4th 1335,

14.

1403.)  "[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion."  (*People v. Morales*, *supra*, 25 Cal.4th at p. 44; see *People v. Ayala* (2000) 23 Cal.4th 225, 283– 284.)  "Improper comment by a prosecutor requires reversal if it so infects a trial with unfairness as to deny due process or '"if it involves the use of deceptive or reprehensible methods to persuade."'"  (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 786, quoting *People v. Winbush* (2017) 2 Cal.5th 402, 480.)

"As a general matter, an appellate court reviews a trial court's ruling on prosecutorial misconduct for abuse of discretion."  (*People v. Alvarez* (1996) 14 Cal.4th 155, 213.)  However, when a claim of prosecutorial misconduct presents a question of law on undisputed facts, the appellate court reviews the issue de novo.  (See *People v. Uribe* (2011) 199 Cal.App.4th 836, 860.)

## B.  Forfeiture and Ineffective Assistance of Counsel

As a threshold matter, defendant concedes his counsel failed to object to all but the first claim of prosecutorial misconduct and, accordingly, that these claims of misconduct may be deemed forfeited.  However, he argues that, to the extent his claims regarding prosecutorial misconduct are forfeited, his counsel provided ineffective assistance in failing to object and request an admonition.

"'In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for review.'"  (*People v. Nieves* (2021) 11 Cal.5th 404, 451; see *People v. Lopez* (2008) 42 Cal.4th 960, 966 ["'A defendant may not complain on appeal of prosecutorial misconduct unless … the defendant objected to the action and also requested that the jury be admonished'"]; see also *People v. Hill* (1998) 17 Cal.4th 800, 820 ["'As a general rule a defendant may not complain on appeal of

15.

prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety'"].)  An exception is made if a timely objection or request for admonition would have been futile, or if an admonition would not have cured the harm caused by the misconduct.  (*Hill*, *supra*, at p. 820.)  "'The reason for this rule, of course, is that "the trial court should be given an opportunity to correct the abuse and thus, if possible, prevent by suitable instructions the harmful effect upon the minds of the jury."'  [Citation.]"  (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1341.)

Alternatively, defendant contends his trial counsel rendered ineffective assistance of counsel for failing to object to the prosecutor's challenged comments.  "'A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.'"  (*People v. Centeno* (2014) 60 Cal.4th 659, 674; see *People v. Lopez*, *supra*, 42 Cal.4th at p. 966.)

A criminal defendant has a Sixth Amendment right to the effective assistance of counsel.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  To prove ineffective assistance of counsel, a defendant must satisfy *Strickland*'s two-part test requiring a showing of counsel's deficient performance and prejudice.  (*Ibid*.)  A defendant bears the burden of showing by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice.  (*Id*. at pp. 688, 694; *People v. Centeno*, *supra*, 60 Cal.4th at p. 674; *People v. Ledesma* (2006) 39 Cal.4th 641, 746; *People v. Ledesma* (1987) 43 Cal.3d 171, 216, 218.)

As to deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" measured against "prevailing professional norms."  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 688.)  "Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell

within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citations.]" (*People v. Ledesma*, *supra*, 39 Cal.4th at p. 746.) "[T]he decision facing counsel in the midst of trial over whether to object to comments made by the prosecutor in closing argument is a highly tactical one" (*People v. Padilla* (1995) 11 Cal.4th 891, 942, overruled on another ground in *People v. Hill*, *supra*, 17 Cal.4th at p. 823), and "a mere failure to object to evidence or argument seldom establishes counsel's incompetence." (*People v. Ghent* (1987) 43 Cal.3d 739, 772; see *People v. Centeno*, *supra*, 60 Cal.4th at pp. 674–675.)

The prejudice prong requires a defendant to establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Ibid*.) Prejudice must be affirmatively proved. (*People v. Maury* (2003) 30 Cal.4th 342, 389.) Where a defendant fails to show prejudice, a reviewing court may reject a claim of ineffective assistance of counsel without reaching the issue of deficient performance. (See *Strickland*, at p. 697.)

### C. Prosecutor Telling the Jury It Is Not to Consider the Absence of Logical Witnesses

Defendant first asserts the prosecutor committed misconduct during rebuttal argument by telling jurors they may not consider the prosecution's failure to call logical witnesses. Defendant agrees neither side is required to call all witnesses but claims the prosecutor's comment that it would be improper speculation if the jurors were to consider what the absent witnesses would say amounted to misconduct.

17.

### 1. *Relevant factual background*

The court instructed the jury, in relevant part:

"You must decide what the facts are. It is up to all of you and you alone to decide what happened based only on the evidence that has been presented to you in this trial."

"You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys'[] comments on the law conflict with my instructions, you must follow my instructions."

"Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence. Their questions are not evidence. Only the witnesses'[] answers are evidence. The attorneys'[] questions are significant only if they helped you to understand the witnesses'[] answers. Do not assume that something is true just because one of the attorneys asked a question that suggested it was true."

"Neither side is required to call all witnesses who may have information about the case or to produce all physical evidence that might be relevant. [¶] The testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence. [¶] Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone."

"You may not convict the defendant unless the People have proved his guilt beyond a reasonable doubt."

During closing argument, defense counsel commented on the minimal evidence presented by the prosecution. Defense counsel noted no family members corroborated the victim's accusations. He pointed out the prosecutor did not call the victim's father, her brothers who—according to the victim—were present during one of the incidents, defendant's brothers who shared a room with defendant, or her former or present boyfriends to whom she claimed to have revealed the sexual abuse. Counsel argued to the jury, "These are all things that would corroborate what she said. They didn't testify. There's no corroboration. That means there's nothing substantiating what she said. These people were not presented to you."

The prosecutor responded in rebuttal argument:

"Now the law also states that neither side has to bring in every possible witness. [Defense counsel] brought up a lot. 'You didn't hear from the parents; you didn't hear from [A.'s] brothers; you didn't hear from [defendant's brothers]; you didn't hear from the boyfriend.'

"Now the Court also instructs you you cannot speculate. How do these tie together?

"[Defense counsel] points out that all these people weren't dragged into court to testify. Well, there's some things for you to consider. [¶] One, there is no obligation. Neither side is required to call every witness who may have information in the case; and, two, you would be speculating about what that witness would testify about. You don't know what they would say. Maybe they'd come in and corroborate everything [A.] told you. You're just speculating.

"You all in jury selection agreed that you would judge this case—

"[DEFENSE COUNSEL]: I have to object—

"[PROSECUTOR]: —just on the evidence presented.

"THE COURT: [Defense counsel]?

"[DEFENSE COUNSEL]: I have to object as burden shifting.

"THE COURT: Overruled.

"[PROSECUTOR]: You have to judge this case just based on the evidence presented. Neither side is required to call all witnesses, and you would be speculating about what that witness might or might not have said. You have to judge the case just based on the evidence presented and that the evidence presented is proof beyond a reasonable doubt—

"[DEFENSE COUNSEL]: I object as improper—

"[PROSECUTOR]: —that the defendant—

"[DEFENSE COUNSEL]: —improper argument.

"THE COURT: Overruled.

"[PROSECUTOR]: And the evidence presented is proof beyond a reasonable doubt that the defendant molested [A.] and committed the crimes that are charged."

### 2. Applicable Law

It is well-established that a prosecutor may not misstate the law during closing argument. (*People v. Cowan* (2017) 8 Cal.App.5th 1152, 1159.) To do so is misconduct. (*People v. Otero* (2012) 210 Cal.App.4th 865, 870–871.)

During closing argument a party is entitled both to discuss the evidence and to comment on reasonable inferences that may be drawn therefrom. (See *People v. Bemore* (2000) 22 Cal.4th 809, 846 [speaking of the prosecutor's entitlement in this regard]; *People v. Sandoval* (1992) 4 Cal.4th 155, 183 [same]; *People v. Morales*, *supra*, 25 Cal.4th at p. 44.)

The prosecution is not required to call any particular witness, nor to put on all the evidence relating to a charge so long as all material evidence bearing thereon is fairly presented in such a manner as to accord to the defendant a fair trial. (*People v. Stanley* (1967) 67 Cal.2d 812, 820; *People v. Tuthill* (1947) 31 Cal.2d 92, 98, overruled on another ground in *People v. Balderas* (1985) 41 Cal.3d 144, 182; see *People v. Kiihoa* (1960) 53 Cal.2d 748, 752.) It is neither unusual nor improper to comment on the failure to call logical witnesses. (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1275; *People v. Castaneda* (2011) 51 Cal.4th 1292, 1333, abrogation recognized on other grounds in *People v. Hardy* (2018) 5 Cal.5th 56, 100.) However, it is improper to ask the jury to speculate about what absent witnesses might have said. (*Gonzales*, *supra*, at p. 1274.)

### 3. Analysis

Defendant concedes "neither side is required to call all witnesses" but claims the prosecutor misstated the law in rebuttal arguments when she "effectively told the jurors that they were not allowed to consider" the absence of logical witnesses. Defendant argues it was proper to argue that "jurors may consider the failure to call logical witnesses and give that whatever meaning they believe it has." The People contend that

defendant misstates the prosecutor's arguments. We agree with the People and conclude defendant fails to establish misconduct or prejudice.

As defendant acknowledges, it is true neither side is required to call all witnesses. (See CALJIC No. 2.11; *People v. Wein* (1958) 50 Cal.2d 383, 402–403, overruled on other grounds in *People v. Daniels* (1969) 71 Cal.2d 1119, 1140.) "The prosecution is not required to call any particular witness, nor to put on all the evidence relating to a charge so long as all material evidence bearing thereon is fairly presented in such a manner as to accord the defendant a fair trial." (*People v. Stanley*, *supra*, 67 Cal.2d at p. 820; see *People v. Galvan* (1962) 208 Cal.App.2d 443, 450.) Accordingly, the prosecutor did not misstate the law in explaining to the jury neither side was required to call all witnesses. (See *People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1189; *People v. Simms* (1970) 10 Cal.App.3d 299, 313.)

Contrary to defendant's argument, the prosecutor never told the jury it was not allowed to consider the absence of logical witnesses or suggested it was improper for defense counsel to comment on the failure to call all witnesses. Rather, the prosecutor explained, "You have to judge this case just based on the evidence presented. Neither side is required to call all witnesses, and you would be speculating about what that witness might or might not have said." The prosecutor's remark to the jury explained it had to base its verdict on facts and evidence, not speculation, which "'did little more than urge the jury not to be influenced by [defense] counsel's arguments, and to instead focus on the testimony and evidence in the case.'" (*People v. Dykes* (2009) 46 Cal.4th 731, 771.) Therefore, we cannot conclude the prosecutor misstated the law or committed prosecutorial misconduct by reminding the jury in rebuttal argument that neither side is required to call all witnesses and that it could not speculate about what any uncalled witnesses might have said. Nor can we conclude the prosecutor's arguments "infect[ed] the trial with such unfairness as to make the conviction a denial of due process." (*People v. Morales*, *supra*, 25 Cal.4th at p. 44.)

21.

Defendant's reference to *People v. Hall* (2000) 82 Cal.App.4th 813 does not change our conclusion. The *Hall* court concluded it was not misconduct for the prosecutor in rebuttal argument to comment on the fact he did not call a certain officer to testify, but went too far when he told the jury the witness's testimony would have been repetitive. (*Id.* at p. 817.) Defendant argues there is no reason why the defense should not also be allowed to comment about the absence of logical witnesses in the prosecution's case. Here, however, defendant fails to demonstrate the prosecutor told the jury the defense was not allowed to comment on the absence of logical witnesses. Rather, the prosecution affirmed that neither side was required to call all witnesses. Defendant cites to *People v. Beghtel* (1966) 239 Cal.App.2d 692, 695 to argue the absence of logical witnesses from the prosecution's case-in-chief could be construed by the jury as the prosecution failing to meet its burden of proving the defendant guilty beyond a reasonable doubt. However, again, defense counsel was permitted to argue the prosecution did not call logical witnesses and did not prove the defendant guilty beyond a reasonable doubt.

Even assuming the prosecutor's remarks amounted to misconduct, we would find no prejudicial error. We presume that the jury relied on the instructions, not the arguments, in convicting defendant. (See *People v. Sanchez* (1995) 12 Cal.4th 1, 70 [we presume "the jury treated the court's instructions as statements of law, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade"], disapproved on other grounds in *People v. Doolin*, *supra*, 45 Cal.4th at p. 421, fn. 22.) "[I]t should be noted that the jury, of course, could totally disregard *all* the arguments of counsel." (*People v. Green* (1980) 27 Cal.3d 1, 76 (conc. & dis. opn. of Richardson, J.); see *People v. Morales*, *supra*, 25 Cal.4th at p. 47.)

Here, the trial court explained that "[n]othing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence." The court also explained that "[n]either side is required to

22.

call all witnesses who may have information about the case or to produce all physical evidence that might be relevant." And if there was any confusion about the prosecutor's explanation of the law, the court instructed the jury: "You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys'[] comments on the law conflict with my instructions, you must follow my instructions." We presume the jury followed these instructions. (See *People v. Wilson* (2008) 44 Cal.4th 758, 834; *People v. Gray* (2005) 37 Cal.4th 168, 231.)

### D. Prosecutor Telling the Jurors They Were Forbidden from Considering What Was Lacking in the Prosecution's Case

Defendant argues "it was equally incorrect to tell the jurors that they may not consider the 'more' they would have liked to have seen." Defendant contends that a juror's need to see more from the prosecution shows that its case was deficient and the prosecution failed to sufficiently prove its case beyond a reasonable doubt. Defendant claims the prosecutor misstated the law and misrepresented the reasonable doubt standard. And that "[f]orbidding the jurors, as the prosecutor did, from asking themselves if they needed to see more from the prosecution's case" effectively reduced the reasonable doubt standard. The People disagree, stating the "prosecutor simply reiterated that the verdict was to be based on the evidence that was presented at trial," which was "proper and did not distort the burden of proof." First, we note this claim was forfeited when defense counsel failed to object. Irrespective, defendant fails to establish the prosecutor's comments constituted prejudicial misconduct.

### 1. Relevant factual background

The trial court instructed the jury:

"The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial. [¶] A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant

23.

guilty beyond a reasonable doubt.  Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.

"Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true.  The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.  [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial.  Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal, and you must find him not guilty."

In closing argument, the prosecutor explained the burden of proof as follows:

"Now going through my burden of proof, you have the instruction on this.  [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction.  It's not, 'Hmm, I'd like to see more.'  [¶] You're not to talk about 'more.'  You talk about the evidence presented in this case, what you have, as [the judge] says, in the circle that you get of the case. (Indicating.)  [¶] It's not 100 percent.  It's not beyond all possible doubt.  It's not 'What if this?'  'What if that?'  'What would that person have said?'  'What would that person have said?'  It's about the evidence presented in court.  It's about what you have.  [¶] … [¶]

"Now proof beyond a reasonable doubt—yes, there are other legal standards.  [Defense counsel] went over some of these with you.  Clear and convincing evidence, preponderance of the evidence, more likely than not—yes, there's a lot of different standards.  [¶] The standard we're talking about here is the highest legal standard but it is not the highest standard ever.  It's not 100 percent.  It's not beyond all possible doubt.  It's not beyond a shadow of a doubt.  We're talking about beyond a reasonable doubt.  That is the same burden that every court in every county, in every state, and every jurisdiction in the United States uses.  Day in and day out, juries reach verdicts.  It's not insurmountable.  It's not unattainable.  It's not 100 percent.  It's reasonable.  We're talking about reasonable doubt."

### 2.    *Applicable Law*

"A jury's verdict in a criminal case must be based on the evidence presented at trial, not on extrinsic matters." (*People v. Leonard* (2007) 40 Cal.4th 1370, 1414; accord, *People v. Nesler* (1997) 16 Cal.4th 561, 578.)  "The reasonable doubt prescribed by statute may well grow out of the lack of evidence in the case as well as the evidence

24.

adduced." (*People v. Simpson* (1954) 43 Cal.2d 553, 566; accord, *People v. Campos* (2007) 156 Cal.App.4th 1228, 1238.)  However, it is improper to ask the jury to speculate about what absent witnesses might have said.  (*People v. Gonzales*, *supra*, 54 Cal.4th at p. 1274.)

"Although counsel have 'broad discretion in discussing the legal and factual merits of a case [citation], it is improper to misstate the law.  [Citation.]'"  (*People v. Mendoza*, *supra*, 42 Cal.4th at p. 702, quoting *People v. Bell* (1989) 49 Cal.3d 502, 538.)  In particular, it is misconduct for counsel to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements.  (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1215, superseded by statute on another point in *In re Steele* (2004) 32 Cal.4th 682, 691.)

### 3.     *Analysis*

Even if the issue had been adequately preserved for appellate review, defendant fails to establish the prosecutor's referenced statements amounted to misconduct.  Defendant mischaracterizes the prosecutor's arguments when he argues it was incorrect for the prosecution "to tell the jurors that they may not consider the 'more' they would have liked to have seen."  Upon review of the record, it is clear the prosecutor was demonstrating the high standard of "[p]roof beyond a reasonable doubt" by explaining that it "is proof that leaves you with an abiding conviction.  It's not, 'Hmm, I'd like to see more.'"  The prosecutor was using this example to give context to the burden of proof, not reduce the burden of proof.

We also disagree with defendant's claim the prosecutor committed error when she said, "You're not to talk about 'more.'"  In context, the prosecutor explained, "You're not to talk about 'more.'  You talk about the evidence presented in this case, what you have, as [the judge] says, in the circle that you get of the case.  (Indicating.)  [¶] It's not 100 percent.  It's not beyond all possible doubt.  It's not 'What if this?'  'What if that?'

'What would that person have said?'  'What would that person have said?'  It's about the evidence presented in court.  It's about what you have."  The prosecutor's statements properly explained to the jurors that they are not to speculate about what a witness might have said.  (See *People v. Gonzales*, *supra*, 54 Cal.4th at p. 1274.)  And the prosecutor did not err by reminding the jurors they are to make their decision based on the evidence.  (See *People v. Leonard*, *supra*, 40 Cal.4th at p. 1414; *People v. Nesler*, *supra*, 16 Cal.4th at p. 578.)  Consequently, we cannot conclude these statements amounted to prosecutorial misconduct, and therefore, defendant cannot establish the failure to object resulted in ineffective assistance of trial counsel.

E.    **Prosecutor Told the Jury the Reasonable Doubt Standard Is Met "Day In and Day Out"**

Defendant next contends the prosecution improperly linked defendant's case to convictions that occur "day in and day out."[1]  Defendant argues the rate of conviction has no bearing on the question of defendant's guilt and should not be something considered by the jury.  Defendant further argues the prosecutor crossed the line when she discussed the frequency of convictions under the reasonable doubt standard.  Defendant claims the prosecutor's argument about guilty verdicts being reached "day in and day out" had the effect of reducing or trivializing the reasonable doubt standard by pointing the jury to an irrelevant consideration, i.e., the frequency with which other defendants have been convicted.  The People disagree, contending the prosecutor was simply explaining the prosecutor's burden of proof was not an impossibly high standard.  We conclude this claim was forfeited when defense counsel failed to object, and defendant fails to demonstrate the requisite prejudice to establish ineffective assistance of counsel.

"To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the

_____

[1]Defendant implies the phrase "day in and day out" referred to guilt or convictions.  Not so.  The prosecutor stated, "Day in and day out, juries reach verdicts."

26.

complained-of comments in an improper or erroneous manner.  [Citations.]"  (*People v. Frye*, *supra*, 18 Cal.4th at p. 970, disapproved on another ground in *People v. Doolin*, *supra*, 45 Cal.4th at p. 421, fn. 22; *People v. Morales*, *supra*, 25 Cal.4th at p. 44; *People v. Ayala*, *supra*, 23 Cal.4th at pp. 283–284.)

Here, defendant fails to establish the prosecutor's "day in and day out" comment had a prejudicial effect on his trial.  As he concedes in his opening brief, the prosecutor's comment that defendants are convicted "day in and day out" did not reduce the reasonable doubt standard to everyday life decisions, such as driving and marriage, as criticized in *People v. Nguyen* (1995) 40 Cal.App.4th 28, 35–36.  And although defendant suggests the comment may have had the effect of "link[ing] [defendant] to every defendant who turned out to be guilty," which was criticized in *Taylor v. Kentucky* (1978) 436 U.S. 478, 486–487, he fails to show how he was prejudiced by the comment, i.e., that it is reasonably probable a more favorable result would have been reached without the comment.  (See *People v. Tully*, *supra*, 54 Cal.4th at p. 1010.)  And because the court properly instructed the jury regarding reasonable doubt, we cannot conclude "there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion."  (*People v. Morales*, *supra*, 25 Cal.4th at p. 44; accord, *People v. Ayala*, *supra*, 23 Cal.4th at pp. 283–284.)

Because defendant has not established he was prejudiced by the challenged statements, he also cannot establish his counsel was ineffective for failing to object to the challenged statements.  (See *Strickland v. Washington*, *supra*, 466 U.S. at p. 694.)

### F.     Prosecutor Told the Jury "We're Beyond" that Now

Defendant contends the prosecutor committed misconduct when she "told the jurors that the presumption of innocence lasted until the start of the evidentiary portion of the trial, but now that all the evidence has been taken, 'we're beyond that now.'"  The defendant contends the prosecutor erred when she told the jury "we're beyond" the

27.

presumption of innocence before the start of deliberations, suggesting to "'the jury it need no longer apply the presumption because it is no longer in effect as a procedural matter.'" We disagree and conclude the prosecutor's comment "we're beyond that now" does not rise to prosecutorial misconduct. We first note the claim is forfeited for lack of objection below. Secondly, we conclude defendant fails to demonstrate he received ineffective assistance of counsel.

### 1.    Relevant Law

"[T]he prosecutor has a wide-ranging right to discuss the case in closing argument. He has the right to fully state his views as to what the evidence shows and to urge whatever conclusions he deems proper." (*People v. Lewis* (1990) 50 Cal.3d 262, 283; see *People v. Panah* (2005) 35 Cal.4th 395, 463.)

A defendant is presumed innocent until proven guilty, and the government has the burden to prove guilt, beyond a reasonable doubt, as to each element of each charged offense. (§ 1096; e.g., *People v. Kobrin* (1995) 11 Cal.4th 416, 419; *People v. Freeman* (1994) 8 Cal.4th 450, 501–505; *People v. Booker* (2011) 51 Cal.4th 141, 185.)

### 2.    Factual Background

The court instructed the jury with CALCRIM No. 220:

"A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must provide it beyond a reasonable doubt."

The following remarks were made by the prosecutor during her rebuttal argument:

"[Defense counsel] stated multiple times the defendant's innocent. 'You will find him innocent.' [¶] He's not innocent. You heard from [A.] You heard what he did to her. You heard the evidence against the defendant. That presumption of innocence that we talked about back in jury selection, that was a presumption of innocence when you had no evidence, when the only verdict you could render at that point without any evidence was not guilty. [¶] But we're beyond that now. You have all the evidence. Go ahead and get readback. Go ahead and listen to the pretext

28.

calls. Go through the transcript. Look at the law as the judge gave it to you.

"After you've reviewed everything, after you've judged the credibility of witnesses, after you have looked at the law, you will find the defendant guilty of the greater crime of forcible lewd act on [A.] as outlined in the law and the verdict forms, and you will find him guilty of sexual penetration of [A.] when she was ten years old or younger. Thank you."

### 3. Analysis

Defendant contends that the prosecutor committed misconduct when she told the jury that "we're beyond" the presumption of innocence before the start of deliberations. We disagree.

Several cases support a conclusion the referenced argument did not amount to misconduct. In *People v. Panah*, *supra*, 35 Cal.4th at page 463, the prosecutor argued the "evidence had 'stripped away' defendant's presumption of innocence." The Supreme Court rejected a claim of prosecutorial misconduct and concluded "the prosecutor's references to the presumption of innocence were made in connection with his general point that, in his view, the evidence, to which he had just referred at length, proved defendant's guilt beyond a reasonable doubt, i.e., the evidence overcame the presumption." (*Ibid*.)

In *People v. Goldberg* (1984) 161 Cal.App.3d 170, the prosecutor argued that after reviewing all the evidence, "'[t]here is no more presumption of innocence. Defendant Goldberg has been proven guilty by the evidence.'" (*Id*. at p. 189, italics omitted.) The court noted the jury had been properly instructed on the presumption of innocence and the prosecutor merely restated the law that a "'defendant in a criminal action is presumed to be innocent until the contrary is proved….'" (*Id*. at p. 189.)

In *People v. Booker*, *supra*, 51 Cal.4th 141, the prosecutor stated, "'The defendant was presumed innocent until the contrary was shown. That presumption should have left many days ago. He doesn't stay presumed innocent.'" (*Id*. at p. 183.) After an objection was overruled, the trial court instructed the jury "'the presumption of innocence is the

29.

point at which you start the case.  At some point you come to the conclusion the person is guilty, the presumption is gone.  On the other hand, if you find the person is not guilty, the presumption of innocence is always there.  Again, you have to interpret how to use that.'"  (*Id*. at pp. 183–184.)  The prosecutor continued, "'As the Court instructed you, I was correct, that the defendant starts out with the presumption of innocence.  That doesn't stay.  That isn't an automatic thing forever.  That's why we have a trial.  Once the evidence convinces you he is no longer innocent, that presumption vanishes.  That's all it is.'"  (*Id*. at p. 184.)  The Supreme Court agreed with the reasoning in *Goldberg* discussed above and characterized the prosecutor's argument as one that merely encouraged the jury to "return a verdict in his favor based on the state of the evidence presented."  (*Booker*, *supra*, at p. 185.)

In *People v. Romo* (2016) 248 Cal.App.4th 682, the prosecutor argued, "'As the evidence comes in—and the evidence has come in—and when you walk into that jury room and discuss the case—discuss the evidence in this case, once the evidence proved to you beyond a reasonable doubt that [defendant] committed the crime, there's no presumption of innocence. It's—it goes away as the evidence comes in and the evidence shows you that he's guilty.  The presumption of innocence doesn't just stay there forever.  [¶] The evidence proves to you that he's committed the crime and is guilty beyond a reasonable doubt.'"  (*Id*. at pp. 690-691, italics omitted.)  The *Romo* court relied on *Booker* and restated its conclusion:  "'Although we do not condone statements that appear to shift the burden of proof onto a defendant (as a defendant is entitled to the presumption of innocence until the contrary is found by the jury), the prosecutor here simply argued the jury should return a verdict in his favor based on the state of the evidence presented.'"  (*Romo*, *supra*, at p. 692, quoting *People v. Booker*, *supra*, 51 Cal.4th at p. 185.)

Here, like in *Romo*, defendant cites to *People v. Dowdell* (2014) 227 Cal.App.4th 1388, which he contends supports his position.  In *Dowdell*, during closing argument, the

prosecutor twice stated without objection that the "'presumption of innocence is over'" (italics omitted), and the defendant "'has gotten his fair trial.'" (*Id.* at p. 1407.) The defendant in *Dowdell* argued defense counsel was deficient for failing to object to these statements. The *Dowdell* court agreed, noting the presumption of innocence continues not only through the presentation of evidence, but also during deliberations and until a verdict is reached. (*Id.* at p. 1406.) The Supreme Court in *Romo* noted that "[t]he *Dowdell* court found *Goldberg* distinguishable because the prosecutor in the case before it had twice made what the court considered to be a clear misstatement of the law regarding the presumption of innocence because the prosecutor also stated the defendant had gotten a 'fair trial,' which 'implied that the "fair trial" was over, and with it, the jury's legal obligation to respect the presumption of innocence.'" (*People v. Romo*, *supra*, 248 Cal.App.4th at pp. 692–693; see *Dowdell*, *supra*, at p. 1408.)

Defendant also points to *People v. Cowan*, *supra*, 8 Cal.App.5th 1152 where the prosecutor told the jury "the presumption ends with the reading of the charges. To put it another way, even before the evidence is received, the presumption of innocence disappears." (*Id.* at p. 1160.) The court concluded the prosecutor's comments were "an unfair attempt to lighten the prosecution's burden of proof and constitutes misconduct." (*Ibid.*)

The court in *People v. Jimenez* (2019) 35 Cal.App.5th 373, reviewed *Booker*, *Panah*, *Goldberg*, and *Dowdell* and clarified that these cases distinguished acceptable arguments of the prosecution: those where the prosecutor contends the evidence has overcome the presumption of innocence from arguments that constitute misconduct, and those where the prosecution tells the jury it need no longer apply the presumption because it is no longer in effect as a procedural matter. (*Jimenez*, *supra*, at p. 385.) "The statement 'he's no longer presumed innocent' was preceded by several statements outlining the strength of the evidence, and the prosecutor immediately followed it up by stating, '[T]he line had been moved, and he's now been proven guilty.' In isolation, the

31.

statement 'no longer presumed innocent' could be interpreted to mean the presumption was no longer in effect at the point of closing argument, but the context shows it was a statement about the strength of the evidence." (*Ibid.*)

Here, we conclude the prosecutor's statement, in context, shows it was a statement about the strength of the evidence. (See *People v. Jimenez*, *supra*, 35 Cal.App.5th at p. 385.) The prosecutor reminded the jurors of the evidence presented before them and explained the "presumption of innocence [was] when you had no evidence, when the only verdict you could render at that point without any evidence was not guilty. [¶] But we're beyond that now. You have all the evidence." The prosecutor went on to add that "[a]fter you've reviewed everything, after you've judged the credibility of witnesses, after you have looked at the law, you will find the defendant guilty …." As such, the prosecutor's statements are more similar to the ones in *Panah*, *Goldberg*, *Romo* and *Booker* and fall in the acceptable category of arguing the weight of the evidence has overcome the presumption of innocence. We disagree with defendant's suggestion that the prosecutor's comment constituted misconduct because it suggested the presumption was "'no longer in effect as a procedural matter'" because it occurred before deliberations. (See *Jimenez*, *supra*, at p. 385.) The prosecution did not tell the jury the presumption no longer applied because it was no longer in effect as a procedural matter. (See *id.* at p. 385.) Therefore, we conclude the prosecutor's argument in the instant case was not an incorrect statement of the law and, instead, an appropriate argument about the weight of the evidence of guilt. Consequently, we do not reach defendant's claim of ineffective assistance of counsel.

## III.    Assembly Bill 124

Defendant argues his sentence on counts 2, 3 and 7 must be vacated in light of Assembly Bill 124. The People agree.

## A.    Relevant Factual Background

Defendant was convicted of three counts of forcible lewd acts on a child who is under the age of 14 years in violation of section 288, subdivision (b)(1) under counts 2, 3, and 7.  The court sentenced defendant to full, middle term sentences of six years in prison for each of these three convictions.  The court took note of the aggravating and mitigating factors.  In aggravation, the court found that defendant took advantage of a position of trust and that the crimes involved a threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness.  In mitigation, the court took note of defendant's lack of criminal history and the fact that he was under 24 years of age when the crimes were committed.

## B.    Applicable Law

Effective January 1, 2022, Assembly Bill 124, in relevant part, amended section 1170, subdivision (b) by adding subdivision (b)(6), which establishes a presumptive mandate to impose the lower term under specific circumstances.  Section 1170, subdivision (b)(6), as amended, provides:

> "(6) Notwithstanding paragraph (1) [as separately amended by Senate Bill 567 (2021–2022 Reg. Sess.)], and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:

> "(A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence.

> "(B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense.

> "(C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking."

33.

Section 1016.7, subdivision (b), which was added by Assembly Bill 124, defines "youth" as "any person under 26 years of age on the date the offense was committed." (Stats. 2021, ch. 695, § 4.)

The question of whether an amended statute applies to an existing case is reviewed de novo. (*People v. American Contractors Indemnity Co.* (1999) 76 Cal.App.4th 1408, 1413.)

## C.    Analysis

Effective January 1, 2022, section 1170, subdivision (b)(6), now imposes a presumption that when the law specifies three possible terms, the court shall impose the lower term where, as relevant here, the defendant was a youth. (See § 1170, subd. (b)(6)(A)–(B); Sen. Bill No. 567 (2021–2022 Reg. Sess.); Stats. 2021, ch. 731 §§ 1.3, 3, subd. (c); see also § 1016.7, subd. (b) [defining "youth" to mean a person under 26 years of age at the time of the offense].) This presumption in favor of the lower term can only be overcome if "the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).)

The amendments to section 1170 apply retroactively to defendant because his judgment was not yet final when the amendments went into effect, and there is no indication the Legislature intended the amendments to apply prospectively only. (See *In re Estrada* (1965) 63 Cal.2d 740, 745–746 [when the Legislature lessens the penalty for a crime, an inference arises that it intended the lighter penalty to apply provided the judgment is not final]; *People v. Frahs* (2020) 9 Cal.5th 618, 628–629 [*Estrada*'s retroactivity rule applies to statutes that make a reduced punishment possible].)

Here, the trial court imposed full, middle term sentences for counts 2, 3, and 7. The charging document alleged, and the jury found, that these crimes occurred "on or about June 24, 2003 and October 14, 2009." Since defendant was born on June 24, 1985,

he was under 26 years old when he committed the offenses.  Under the new law, defendant may be entitled to be sentenced to the low term on each of the offenses, unless the court expressly finds that the aggravating circumstances outweigh the mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice.  Consequently, this matter is remanded for the trial court to resentence defendant in accordance with the changes to section 1170, subdivision (b), after Assembly Bill 124.

## DISPOSITION

Defendant's conviction on count 8 is reduced to the lesser included offense of sexual penetration of a minor under section 289, subdivision (h).  The matter is remanded for a full resentencing hearing during which, in addition to resentencing on count 8, the court should consider the changes to section 1170, subdivision (b), as discussed herein. In all other respects, the judgment is affirmed.


                                                                PEÑA, J.

WE CONCUR:


DETJEN, Acting P. J.


SNAUFFER, J.